44      193
48      284

## McPHEE v. KELSEY.

[74 Pac. 401, 75 Pac. 713.]

EVIDENCE OF AGREEMENT AS TO USE OF IRRIGATING WATER.

1. The evidence shows an agreement between the persons who enlarged and extended the ditch in question that the waters of both the sloughs crossed should be carried over to the natural stream with the waters of the ditch, and thereby become available for the use of the plaintiffs, who lived further down.

REVOCABILITY OF EXECUTED PAROL LICENSE—ESTOPPEL.

2. A parol license cannot be revoked at the will of the grantor where the grantee has been induced by the grantor to make investments in reliance on his rights under the license, and will be materially injured by the change: Ewing v. Rhea, 37 Or. 583, distinguished. This case illustrates the rule: Plaintiffs having enlarged and improved defendant's irrigating ditch at their own expense, under an agreement that they should have certain proportions of the water that might flow therein, and having, in reliance on such agreement, reduced their lands to cultivation, have rights in the ditch and its water that defendant cannot arbitrarily revoke.

APPROPRIABILITY OF WATER—ESTOPPEL.

3. Where the owners of an irrigating ditch which flowed into a slough agreed with plaintiffs, for a consideration, that the ditch might be carried across the slough and beyond, and plaintiffs have the water thereof, the owners, by accepting the consideration, estopped themselves from claiming that the water in the slough was not such as could be appropriated.

APPROPRIATION OF WATER PROPORTIONATELY TO PRIOR INTERESTS.

4. Where several persons each owned a certain share of the water in a ditch, the joint appropriation being originally for crops and stock, but subsequently some of the owners began using water for a new and distinct purpose, claiming the additional water in proportion to their respective original interests, the claim thus made measures their rights as between themselves.

44 OR.——13

DIVERSION OF WATER—CONSTRUCTION OF PLEADING.

5. Where, in an action to determine plaintiffs' rights in certain waters in a slough, plaintiffs alleged a claim to such waters by a prior appropriation, and also set up an agreement with defendant, under which, for a consideration, plaintiffs extended their ditch across and beyond the slough, and by "mutual consent and agreement, and at defendant's request, plaintiffs have since the date of such agreement used such ditch in common from the place where it crossed the slough, to carry and convey the waters thereof down to the point where the ditch emptied" into a stream, plaintiffs have fairly claimed the slough waters both by appropriation and by contract.

IDEM.

6. The complaint herein, fairly construed, alleges a claim to the waters of the North Powder River by the parties hereto by appropriation as well as a claim through a contract between the plaintiffs and the defendant.

ESTOPPEL TO ASSERT RIPARIAN RIGHTS.

7. Where a diversion of the water of a slough situated on defendant's land was the result of his express agreement with plaintiffs, defendant was not thereafter entitled to claim that such diversion was an invasion of his riparian rights.

From Baker: ROBERT EAKIN, Judge.

Suit to determine conflicting water rights by J. D. McPhee, James Dalton, and P. L. Smith against L. S. Kelsey, resulting in a decree for defendant, from which this appeal is taken.        REVERSED.

For appellants there was a brief over the names of *Leroy Lomax* and *John L. Rand,* with an oral argument by *Mr. Lomax.*

For respondent there was a brief and an oral argument by *Mr. Thos. H. Crawford.*

MR. JUSTICE WOLVERTON delivered the opinion.

1. In the year 1888 the defendant, Kelsey, and O'Bryant, J. D. Wilson, and his son were the owners of a ditch which intersects North Powder River twenty chains south of the center of section 36, township 6 south of range 38 east of the Willamette Meridian, and runs in a southeasterly direction nearly seven-eighths of a mile to the dividing line between the lands of defendant and one Hutchinson; thence south on such line about one-half mile to an intersection with a swale or slough known as the "Hutchinson Slough," which had its outlet into the Warm Spring Branch a half

mile or more to the east. As nearly as we are able to ascertain, the respective interests of the parties in such ditch were as follows: O'Bryant, one-sixth, and the other three each a third in the remainder. Two gates or taps had been provided by which water could be diverted therefrom for use, one about a fourth of a mile from its source and the other a mile. O'Bryant and the Wilsons diverted the water for their use from the second gate, and the defendant used from the ditch running south from there. During the year the plaintiffs McPhee and Smith, together with William Tanner and James York, entered into an arrangement with Kelsey, to which the Wilsons assented, whereby they were to enlarge the ditch to double its capacity, and extend it south across the second Hutchinson slough to an intersection with the Warm Spring Branch, and were to have certain interests in the ditch and the appropriation of water from North Powder River through it; such parties, except York, being the owners of land some two miles or more to the east, susceptible of irrigation from the Warm Spring Branch. The ditch, which was originally four feet in width, was to be enlarged to eight feet, as far at least as the first gate, known as the "Davis Tap," and from there on to be of such capacity as would carry the volume admitted at its source after enlargement. The witnesses were not as definite in their testimony concerning the agreement respecting the dimensions of the enlargement and the extent thereof as they might have been, and there is some controversy and contradiction among them. We think, however, the above statement of the terms of the agreement for enlargement and the extension of the ditch is reasonably deducible from the entire evidence. There is also a serious dispute as to whether McPhee, Smith, and others fully performed their agreement in making the enlargement; but a careful survey of the testimony has impressed us that they completed the work undertaken,

at least in substance. In reality, York was interested in behalf of the defendant, and although, by the agreement, he was nominally to acquire an interest in the ditch and the water to be conveyed therein after enlargement, such interest was to and did inure to the benefit of the defendant. It does not appear that York owned any land, or that he had any use for the water to be appropriated, and yet it seems that he employed other parties to do the work, and that the defendent reimbursed him for the outlay, or perhaps paid such parties directly and took over York's interest to himself at once, so that to all intents and purposes the defendant became a joint owner in the rights acquired by the enlargement with McPhee, Smith, and Tanner.

There is also another dispute as to the extent and nature of the interest these parties were to acquire in the ditch by the enlargement. The defendant insists that such interest was to be subject and subordinate to the rights which he, O'Bryant, and the Wilsons possessed in the original ditch and appropriation—in other words, that each was to have a fourth interest in the enlargement only; and in this he is supported by the clear preponderance of the testimony. He seems to concede that under the agreement with McPhee and others, as he interprets it, if they had complied with their undertaking by full performance, each would have acquired a "six-inch space," to use his term, in the ditch, subject, of course, to the original appropriation. But the real agreement gave them each a foot of space, or, together, a one-half interest in the ditch, but subordinate to such original appropriation. Considered as a whole, they thus acquired each a one-eighth interest in the ditch, subject to the limitations indicated, and the defendant acquired the interest nominally accorded to York. We come the more readily to this conclusion because of the fact that defendant has treated the York interest as a foot or eighth interest in the ditch, and has transferred it

to Neill.  True, he claims that Neill made an additional enlargement, and acquired his interest by that means, but, besides doing work upon the ditch, Neill paid him $125, which constituted the consideration for the transfer of such interest.  The dealing was especially with reference to the additional interest that defendant acquired through York. Through the extension of the ditch made by McPhee and others across the second Hutchinson slough, the water thereof was taken up and carried into the. Warm Spring Branch some distance above where it was accustomed to flow.  Under the agreement, it was the clear intention of the parties concerned that the water of the slough should inure to their benefit.  This is manifest not only from the declarations of the defendant made at the time, but from his subsequent acts with reference thereto.  He claims that he diverted and appropriated the water of the slough prior to such agreement, and there is evidence of his having cut some ditches, two in number, perhaps, and turned some of the water out upon his land.  This was prior, however, to the time of entering into the agreement, since when he has not continued the diversion, and made none other until he dammed up and cut the ditch extension in August last, an act of which the plaintiffs complain in part.

He claimed at the time of the agreement to have acquired plenty of water through the ditch from North Powder, and that he did not care or have any use for such as was accustomed to flow in the slough.  The original ditch was constructed across the first slough for the purpose of diverting the water from it into the second, and thence allow it to escape into the Warm Spring Branch, so that defendant could cultivate the bed of the first slough below.  When, therefore, the enlargement was completed, and the ditch carried through to the Warm Spring Branch, it inured to the benefit of McPhee and others, the defendant acquiring an interest with them through York, which

interest has subsequently gone to Neill. Such was the status of the case, as fairly deducible from the evidence, after the change in the original ditch owned by defendant, O'Bryant, and others. The defendant has since succeeded to the interest of O'Bryant and the younger Wilson, and some one else not definitely shown has acquired that of the elder Wilson. The plaintiff Smith is still the owner of his interest intact, and Dalton has succeeded to the entire interest of Tanner, and to McPhee's diversion from North Powder River, but not to the water of Hutchinson Slough. Defendant's original appropriation of water from North Powder River and the enlarged appropriation therefrom and that from Hutchinson Slough were for domestic, stock, and irrigating purposes; that is, for the irrigation of timothy and wild grasses used for making hay, and crops of cereals, such as wheat, oats, barley, and the like. Water was required for such irrigation as late as the early part of July, after which time no use was made of it except such as was needed by the parties concerned for domestic and stock purposes, which was inconsiderable as compared with the whole. Such is, therefore, the measure of the original appropriation in which the defendant and the elder Wilson's successor have the first right to the extent of one-half of the capacity of the ditch, and the plaintiffs and Neill the exclusive right to the other half, but in subordination to the right just defined.

It transpires, however, that a new industry has subsequently developed, requiring a much later use of the water —that of the culture of alfalfa, used for hay, from which two and three crops are taken during the season. Irrigation is required for the second crop in the latter part of July or the first of August, and for the third still later. It appears that the plaintiffs McPhee and Dalton have engaged largely in growing alfalfa, McPhee having sown thereto some thirteen acres and Dalton about 180. As to

Smith, it is not directly in evidence that he has sown any
of his land to alfalfa, but it does appear that he was using
the water up to about the time when it was turned out by
the defendant, August 7, 1902.  The defendant has reduced
about 200 acres to alfalfa culture.  For the ordinary crops
there has always been sufficient water in North Powder
River for all purposes.  After the 1st of July, however, the
supply becomes limited, and it seems that in the season
of 1902 there was insufficient to meet the demands of all
parties to this litigation for their stock and alfalfa.  The
defendant, claiming the whole of the water that he was
enabled to get into the head of the ditch, which was prop-
ably less than half the capacity thereof, diverted it on
August 1st from the ditch above the Hutchinson Slough,
and, claiming the slough water also, diverted it at the same
time at a point in the extension south of the second slough,
whereupon this suit was instituted to enjoin him from
continuing the diversion and to determine the rights of
the respective parties in the premises.  The water from
the slough was turned out upon defendant's pasture lands,
but the other the defendant claims was utilized for irri-
gating his alfalfa crop.  We are now to deduce from these
conditions the legal status of the respective parties plain-
tiff and defendant.

2. It is first contended by defendant that plaintiffs could
acquire no easement in the ditch through verbal agree-
ment, and therefore whatever rights they obtained by rea-
son of such agreement and the enlargement of the ditch
in pursuance thereof constituted a mere license, revocable
at his pleasure.  In this case, however, the plaintiffs were
induced by defendant to expend their means and labor in
enlarging and extending the ditch, and have since, in reli-
ance upon their supposed rights thus acquired, reduced
their land to cultivation and employed the water thereon.
By such acts the defendant is estopped from retracting or

revoking whatever license or easement the plaintiffs thus acquired to flow water in the ditch, he being unable to place them *in statu quo*. Such a revocation would work an inequality and injustice that the law will not tolerate: *Mc-Broom* v. *Thompson*, 25 Or. 559 (37 Pac. 57, 42 Am. St. Rep. 806); *Garrett* v. *Bishop*, 27 Or. 349 (41 Pac. 10); *North Powder Milling Co.* v. *Coughanour*, 34 Or. 10 (54 Pac. 223); *Bowman* v. *Bowman*, 35 Or. 279 (57 Pac. 546). The work was not performed through the mere passivity of the defendant, but through his inducement and positive agreement for a consideration and benefit inuring to him; and after receiving the benefit he could not be heard to deny the plaintiffs the advantage of their diversion secured through the verbal agreement and their compliance therewith. The case therefore does not fall within the doctrine of *Lavery* v. *Arnold*, 36 Or. 84 (57 Pac. 906, 58 Pac. 524); *Hallock* v. *Suitor*, 37 Or. 9 (60 Pac. 384); and *Ewing* v. *Rhea*, 37 Or. 583 (62 Pac. 790, 52 L. R. A. 140, 82 Am. St. Rep. 783), as defendant's counsel contend. This is also conclusive of whatever riparian rights the defendant may have or claim upon the North Powder River.

3. The next contention of defendant is that the water of Hutchinson Slough was not susceptible of appropriation for two reasons: (1) Because the slough is not a natural stream or water course; and (2) because the water is merely waste or surplus water that has been allowed to percolate and otherwise to flow into the drainage course from irrigation by parties above, whereas naturally no water was accustomed to or would flow therein, and that the person upon whose land such water accumulates may do as he pleases with it—either to cast it upon his neighbor or use it for his own purposes. Neither of these reasons can avail the defendant, however, under the conditions here present. He has, by direct agreement, disposed of the water of the slough, and for a good consideration waived for the benefit

of the plaintiffs all his rights thereto. It can make no difference whether the slough was a natural stream or water course or a mere conduit for the surface water to pass into the Warm Spring Branch, and he cannot recall any rights he may formerly have had, to the present detriment of the plaintiffs.

4. Now, as to the respective rights of the parties to this controversy, our conclusion is that as between them there has been an appropriation of the water of North Powder River, diverted by means of the ditch, which is new and distinct from the appropriation originally contemplated and made, and which was not in the minds of the parties when the agreement heretofore discussed was entered into, namely, an appropriation of such water for the culture of alfalfa. It is so well settled as to have become almost axiomatic that the rights of an appropriator are confined to his specific or particular needs. Using the language of Mr. Justice Lord in *Simmons* v. *Winters*, 21 Or. 35 (27 Pac. 7, 28 Am. St. Rep. 727), "The amount of water appropriated must be restricted to the quantity needed for such purpose." See, also, *Wimer* v. *Simmons*, 27 Or. 1 (39 Pac. 6, 50 Am. St. Rep. 685); *Nevada Ditch Co.* v. *Bennett*, 30 Or. 59, 91 (45 Pac. 472, 60 Am. St. Rep. 777). It is also a well-authenticated principle that appropriations may be measured by the period or time of use, as well as by the quantity employed. This finds illustration in the opinion of Mr. Chief Justice Hawley in *Barnes* v. *Sabron*, 10 Nev. 217, 245, wherein he says: "If the first appropriator only appropriates a part of the waters of the stream for a certain period of time, any other person or persons may not only appropriate a part or the whole of the residue, and acquire a right thereto as perfect as the first appropriator, but may also acquire a right to the quantity of water used by the first appropriator at such times as not needed or used by him." See, also, Black's Pomeroy, Water Rights,

§ 91; Kinney, Irr. §§ 177, 178; Long, Irr. § 61; *Smith* v. *O'Hara*, 43 Cal. 371; *Santa Paula Water Works* v. *Peralta*, 113 Cal. 38 (45 Pac. 168).

We are justified in premising that the plaintiffs and the defendant began the use of water for the irrigation of alfalfa about the same time, and developed the product as their circumstances would permit or the occasion demanded concurrently in point of time. They have thus jointly made a new and additional appropriation, which is, by nature, distinct and separate from the original one, and the enlargement thereof affected by the agreement. The plaintiffs, however, in making their appropriation, have claimed to make it in proportion to the interest each asserted that he owned in the ditch—that is, on the basis of a one-eighth interest in the whole to each of the four individuals engaged in the enlargement—and the extent of their right has therefore become fixed by the manner of their claim. The correlative interests of the parties in the appropriations are therefore as follows: As regards the first appropriation, augmented by consideration of the agreement, the defendant and the successor to the interest of the elder Wilson have the first and superior right to a quantity of water which would fill the ditch as now en-. larged to one-half its capacity. Of the surplus above such one-half the plaintiff Dalton is entitled to a one-half and Smith to a fourth. In the new or additional appropriation of the water diverted by the ditch the defendant is entitled to one-half of the water diverted, diminished by such rights as the elder Wilson's successor may have acquired thereto, the plaintiff Dalton to one-fourth, and Smith to one-eighth, for use in their alfalfa culture, after the first crop. The right to the use of the water in Hutchinson Slough belongs to McPhee, Dalton, and Smith. Neill possibly has an interest therein, but we cannot adjudicate as to persons not parties to the record, nor can we under-

take to determine whether the water of North Powder River was subject to appropriation as it may concern any one not a party hereto. We are only to settle the dispute as between the present litigants. The evidence has been too meager to determine as to the quantity of water diverted or appropriated in either the first or the enlarged appropriation, or in the new and additional appropriation, but it will suffice to apportion the appropriations according to the several interests of the parties litigant concerned as herein designated and determined. This adjustment seems to us to be equitable and just between the parties, and will work no injury to any one. We are impressed that persons often use more water in irrigation than is necessary by a systematic, careful, and economical application of it, and that, if the water flowing into this ditch is so employed, there will be sufficient to supply the reasonable needs of all these parties.

The decree of the trial court will therefore be reversed, and one here entered in accordance with this opinion, enjoining the defendant from the diversion of any water except such as he is entitled to.          Reversed.

---

### On Motion for Rehearing.

Mr. Justice Wolverton delivered the opinion.

A petition and supplementary petition for rehearing have been filed herein. To these an answer has been interposed, and a reply made to the answer. By these documents, which are voluminous and searching, the case has been ably and exhaustively presented by both sides upon the questions as to which a rehearing is sought. The main contention centers about the pleadings, and is whether the court, in its opinion, has transcended their scope, and decided the cause upon issues not contained therein.

5. First, as it respects Hutchinson Slough, it is insisted that plaintiff's entire claim to the waters thereof was by right of a prior appropriation, and that no claim was made thereto in the complaint by virtue of the contract of 1888. It is true that plaintiffs set up that they were entitled to the waters of Hutchinson Slough by right of prior appropriation. But this is not all. In the same cause of suit— for the complaint purports to contain but one—they set up the agreement of 1888, and allege that with the consent and agreement of the defendant Kelsey, they extended the ditch across Hutchinson Slough, and continued on and intersected the Warm Spring Branch. And, again, "that by mutual consent and agreement, and at the request and with the consent of the said defendant Kelsey, the plaintiffs have since the year 1888 used the said Dalton, Smith, and Kelsey ditch in common from the place where the same crosses the said Hutchinson Slough to carry and convey the waters of said slough on down to the said point where the same is emptied into said Warm Spring Branch." Without further detail, we are firmly impressed that the findings of the court are within the scope of the complaint, in view of the manner in which it is drafted and these allegations.

6. It is next insisted that under the complaint the plaintiffs claim the water from North Powder River entirely by virtue of the contract with defendant of 1888, and not by prior appropriation. But, as we read the complaint, the very gist of it respecting these waters is that plaintiffs acquired such as they claim by prior appropriation. After reciting that plaintiffs and their predecessors entered into the contract of 1888, they allege that "said plaintiffs and their predecessors and said defendant by means of said ditch took out and appropriated for irrigation and beneficial purposes 1,600 inches of water, miners' measure, under six-inch pressure," and then it is shown how much

each of the respective parties appropriated. Now, as we said in the main opinion, there was a new appropriation made, not in the minds of the contracting parties when the agreement was entered into. The diversion from North Powder River, however, was made through the ditch in which all these parties had a joint interest, acquired by reason of the agreement. Under these conditions, the several parties made their respective appropriations for the irrigation of the second and third crops of alfalfa. The agreement made it possible for such appropriations to follow, and we think the complaint covers the issue. True, the answer sets up a very different agreement from the one alleged in the complaint, but the evidence does not support the defendant's contention in that regard.

7. The further idea is advanced that defendant's riparian rights are being invaded. But this cannot avail him when the diversion is the result of an express agreement upon his part.

The petition for rehearing will be denied.

REHEARING DENIED.