POPHAM, RESPONDENT, v. HOLLORON, APPELLANT.

(No. 6,416.)

(Submitted February 21, 1929. Decided March 30, 1929.)

[275 Pac. 1099.]

444

*Messrs. O'Hara, Madeen & Grant,* for Appellant, submitted a brief; *Mr. R. A. O'Hara* argued the cause orally.

*Mr. J. D. Taylor,* for Respondent, submitted a brief, and argued the cause orally.

MR. JUSTICE MATTHEWS delivered the opinion of the court.

In June, 1927, the plaintiff, E. L. Popham, commenced action to have his rights in certain waters, alleged to have been appropriated for irrigation purposes decreed and the defendant Elizabeth Holloron, enjoined from interfering therewith. The complaint is in the usual form in water right cases except that it alleges the source of the water as "Holloron gulch."

By answer, the defendant alleges that Holloron gulch "is a natural dry run or ravine in which, except during the season of the year when melting snows might cause water to flow therein, and is not a natural stream fed by springs; that prior to 1911 there was no water of any kind or character flowing in Holloron Gulch during the irrigation season of any year, except such water as was wasted  *  *  *  from the Hedge ditch  *  *  *  belonging to the Ravalli Land and Irrigation Company." Defendant then alleges that in 1911 one Julia Fitzgibbon was the owner of certain lands described, and that, as a result of the construction of a canal by the Bitter

Root Valley Irrigation Company, bringing water into that vicinity, a certain amount of waste and seepage water ran over and percolated through the Fitzgibbon land and thence found its way into Holloron gulch, and thereafter the defendant, with the consent of the owner of the Fitzgibbon land, "diverted from said gulch" sufficient water to irrigate about 30 acres of land; that, as the licensee of the owner of land from which the water flows, seeps and percolates, defendant's right is superior to that of plaintiff. The affirmative allegations of the answer are denied by reply.

Issue being joined, the cause was tried to the court and a jury, and, on the conclusion of the testimony certain special interrogatories were submitted to the jury. In answer to interrogatories 1 and 2 the jury declared that the plaintiff constructed a ditch and diverted water from Holloron gulch in 1902, and the defendant constructed a ditch and diverted water therefrom in 1924. Answers to the remaining five interrogatories declare that the sources of the waters flowing in Holloron gulch are "waste and seepage," and that plaintiff did not "impound" such waters.

The court adopted findings 1 and 2 and rejected the others, and thereupon made findings in conformity with the usual practice in water right suits, declaring the ownership and possession of lands by the plaintiff and the defendant, which lands are arid in character, requiring irrigation. The court then found that the plaintiff by means of a dam, headgates, and ditches, appropriated 50 inches, or $1\frac{1}{4}$ cubic feet per second, of "the waters flowing in Holloron gulch," in June, 1902. The court then found that plaintiff increased his ditch in 1911 to a capacity of 300 inches and constructed a dam which backed the water up a distance of about 120 feet and impounded and diverted and used all of the waters flowing in Holloron gulch; that the waters of the gulch flow in a well-defined channel having a bed and banks. The court fixed plaintiff's necessities at 160 inches or 4 cubic feet per second of water, and found that he had used this amount for more than 16 years prior to the commencement of the action "openly, notoriously,

exclusively, adversely and peaceably.'' The court then found that the defendant had appropriated 40 inches, or one cubic foot per second of time of the ''waters flowing in Holloron gulch,'' necessary for use on her lands, and had used the same since 1924.

On these findings the court decreed plaintiff 50 inches of water appropriated in 1902, and 110 inches appropriated in 1911, and decreed defendant 40 inches as of 1924, and, in the usual manner, enjoined each party from interfering with the other's rights.

Defendant has appealed from the judgment and makes eleven specifications of error based upon the court's rejection of the findings of the jury and upon findings made and conclusions of law drawn therefrom; but, taken as a whole, they merely raise the question as to whether the waters of Holloron gulch were subject to appropriation in the usual manner, or whether plaintiff acquired any rights thereto unless he impounded and stored the waters for use.

The record discloses that Holloron gulch is a deep ravine extending from the foothills bordering the Bitter Root Valley across bench-lands to the lower levels of the valley. It attains a depth of nearly 100 feet and a width nearly as great. Through the bottom of this gulch extends a well-defined channel through which, in season, the waters of melting snows and rainfall drain from the foothills down to the valley. There are no springs in the gulch or at its head, and, prior to 1900, no water passed down it except such as came from rains and melting snow, and how extensive these waters were or for what period of the year they flowed does not appear, but evidently they were inconsiderable, as no one thought of utilizing them for irrigation purposes. In 1900 or 1901 the Ravalli Land & Irrigation Company completed a ditch referred to as the ''Hedge ditch,'' which brought water from some source, undisclosed, to the bench adjacent to the gulch, and thereafter overflow, waste, and seepage water from this ditch found its way into the gulch and flowed down the channel during the irrigation season.

In 1902 the plaintiff constructed a small dam across the channel of the gulch and built a ditch a mile and a half long which conducted all of the water then in the gulch to and upon his land, where it was utilized for irrigation purposes. After 1902 the amount of water flowing down the gulch increased from year to year, and in 1904 plaintiff's dam was washed out. He thereupon constructed a new dam, which backed the water up approximately 40 yards, and continued to use all of the water in the gulch, increasing the area of his cultivated lands as more water was available.

In 1909 or 1910 the Bitter Root Valley Irrigation Company completed a canal which brought water from Como Lake, 50 miles away, to the bench adjacent to the gulch, although the canal itself was a mile or a mile and a half from the gulch; the intervening land became so saturated with water that, whereas prior to the bringing in of these ditches, wells drilled to a depth of 200 feet would not produce water, the water table of the vicinity thereafter extended almost to the surface. As a result of this condition springs arose in the bed of the gulch and seepage water materially augmented the flow in the channel of the gulch.

In 1911 plaintiff increased the size and capacity of his ditch and the area of his irrigated lands, and thereafter used all of the water flowing down the gulch for irrigation purposes. No attempt to disturb such use was made until 1923, when defendant, through her sons and agents, placed a dam in the gulch above that of plaintiff and thereafter constructed a ditch diverting the water to and upon her lands. Her point of diversion is on land belonging to a Mrs. Fitzgibbon, and before entering this land defendant secured the permission of Mrs. Fitzgibbon to construct her ditch thereon and take the water. It appears that, through seepage, percolation, and overflow a bog or swamp had formed upon the Fitzgibbon place adjacent to the gulch and above where defendant's ditch tapped the channel. Counsel for defendant argue that defendant's ditch has the effect of draining this bog and diverting water which would otherwise "seep or flow" therefrom into Holloron

gulch. However, there is nothing in the testimony to warrant the statement that defendant's ditch in any manner drains the Fitzgibbon land; it was merely taken out of the gulch by means of a dam, in the same manner as that of the plaintiff; a ditch for drainage purposes needs no dam at its head.

The situation of defendant and plaintiff, then, is the same; each attempted to appropriate water flowing in a well-defined channel, but which, except for the negligible quantity supplied by rains and melting snow, comes from no natural source, but is the result of waste, seepage, and percolation from artificial irrigation works bringing water from foreign sources to lands adjacent to the gulch in question.

Defendant's first contention is that this water, admittedly flowing in the channel of the gulch from year to year, is flood, seepage and waste water and may therefore be appropriated only by "impounding" it, which, under plaintiff's own testimony, was not done.

Our present statute (sec. 7093, Revised Codes 1921) provides for such appropriation, but was not enacted until 1921, and is not controlling in this case, if, indeed, it is applicable to such a condition as existed in Holloron gulch in 1902 and 1911. Prior to its enactment we had no provision for the appropriation of flood, seepage, and waste waters as such, and, in the absence of statutory authority to make use of such vagrant or fugitive water, no right could be acquired as against the owner who seeks to recapture them (*Stookey v. Green*, 53 Utah, 311, 178 Pac. 586), but, having passed beyond control of the owner they became "abandoned personalty" which could be taken up and used by the person first in the field (*Clemens-Horst Co.* v. *New Blue Point Min. Co.*, 177 Cal. 631, 171 Pac. 417; *Elgin* v. *Weatherstone*, 123 Wash. 249, 212 Pac. 562; *Dickey* v. *Maddux*, 48 Wash. 411, 93 Pac. 1090).

This taking and use of such waters does not constitute an appropriation as that term is used in our statutes, as the taker acquired no such usufruct right in the water as to entitle him to compel the continuation of the condition furnishing

him with water (*Stepp* v. *Williams*, 52 Cal. App. 237, 198 Pac. 661; *Brosnan* v. *Boggs*, 101 Or. 477, 198 Pac. 890; *Wedgworth* v. *Wedgworth*, 20 Ariz. 518, 181 Pac. 952), or prevent the owner of land which has become saturated by waste water from draining his land in such manner as to cut off the flow from the user (*Garns* v. *Rollins*, 41 Utah, 260, Ann. Cas. 1915C, 1159, 125 Pac. 867). These rules, however, apply to surface or waste water while outlawed and before it reaches or forms a stream flowing in a natural channel (*Weinberg Co.* v. *Bixby*, 185 Cal. 87, 196 Pac. 25); it loses its character as vagrant fugitive water when it collects in a natural lake or stream (*Fordham* v. *Northern Pac. Ry. Co.*, 30 Mont. 421, 430, 104 Am. St. Rep. 729, 66 L. R. A. 556, 76 Pac. 1040; *Davis* v. *Fry*, 14 Okl. 340, 2 Ann. Cas. 193, 69 L. R. A. 460, 78 Pac. 180; *San Gabriel Valley Country Club* v. *Los Angeles County*, 182 Cal. 392, 9 A. L. R. 1200, 188 Pac. 554; *Jaquez Ditch Co.* v. *Garcia*, 17 N. M. 160, 124 Pac. 891).

There can be no question but that the waters which in times of storms and melting snow, flowed down the channel of Holloron gulch from the hills at its source and drained from the surrounding territory, formed a natural "watercourse" in that gulch within the meaning of that term, which is "a living stream with defined banks and channel, not necessarily running at all times, but fed from other and more permanent sources than mere surface water" (*Le Munyon* v. *Gallatin Valley Ry. Co.*, 60 Mont. 517, 199 Pac. 915), which channel may at times be dry, so long as, to the casual glance, it bears the unmistakable impress of the frequent action of water which has flowed through it from time immemorial (*Hildebrandt* v. *Montgomery*, 113 Or. 687, 234 Pac. 267; *Tierney* v. *Yakima County*, 136 Wash. 481, 239 Pac. 248).

The main source of supply of all western streams is, primarily, the melting of snow and the fall of rain in our mountains and foothills collecting each year in their accustomed channels and thence finding their way to the streams; this is a more permanent source than "mere surface water" diffused over the land by rains and melting snow. (Farnham on

Waters, 1559.) Such waters, thus forming a watercourse and flowing with regularity from year to year, although the channel may be dry for the major portion of each year, are a proper subject of appropriation (*Borman* v. *Blackmon,* 60 Or. 304, 118 Pac. 848; *Los. Angeles Assn.* v. *Los Angeles,* 103 Cal. 461, 37 Pac. 375), and where such waters did not originally collect and flow down the channel, if through the instrumentality of man they have been made to do so and, through years of so flowing have acquired a permanent character as the natural drainage of the watershed, the original manner of the creation of the stream is immaterial; it is a "watercourse" with all the attributes of one wholly natural (*San Gabriel Valley Country Club* v. *Los Angeles County,* above; *City of Reading* v. *Althouse,* 93 Pa. 400).

Where, also, vagrant fugitive waters have finally collected and reached a natural channel and thus lose their original character as seepage, percolating, surface, or waste waters, and flow with such regularity as above described, whether from rains raising the surface of a lake until it overflows (*Duckworth* v. *Watsonville Water & Light Co.,* 150 Cal. 520, 89 Pac. 338), seepage and percolation forming springs (*Le Quime* v. *Chambers,* 15 Ida. 405, 21 L. R. A. (n. s.) 76, 98 Pac. 415), surface water collecting in a canyon (*Denver, T. & Ft. W. R. Co.* v. *Dotson,* 20 Colo. 304, 38 Pac. 322), artificial water over which the creator has lost control (*Hagerman Irr. Co.* v. *East Grand Plains Drainage District,* 25 N. M. 649, 187 Pac. 555), water from artesian wells accidentally developed while drilling for oil (*De Wolfskill* v. *Smith,* 5 Cal. App. 175, 89 Pac. 1001), or water of a slough fed by seepage from irrigation (*McPhee* v. *Kelsey,* 44 Or. 193, 74 Pac. 401, rehearing 44 Or. 193, 75 Pac. 713), the waters flowing in such natural channel constitute a watercourse within the meaning of the law of water rights.

Our statute on the subject of appropriation of water, in existence from 1901 to 1921, and therefore controlling as to plaintiff's appropriations in 1902 and 1911, reads: "The right to the use of any unappropriated water of any natural

stream, water course, spring, dry coulee, or other natural source of supply, and of any running water flowing in the streams, rivers, canyons and ravines of this state, may hereafter be acquired by appropriation." (Sec. 4840, Rev. Codes 1907.) It will be noted that, while the first clause of the section applies to waters having a "natural source of supply," the second clause refers to "any running water flowing in * * * canyons and ravines." The manner in which the section is phrased evinces the legislative intent to differentiate between the two and grant a right to appropriate running waters not necessarily having a natural source of supply, but, as in the illustrations given above, forming a "watercourse" and providing a source which may be put to a beneficial use.

In *Willow Creek Irrigation Co.* v. *Michaelson,* 21 Utah, 248, 81 Am. St. Rep. 687, 51 L. R. A. 280, 60 Pac. 943, relied upon by counsel for defendant, the effect just given to our statute is denied to a similar enactment of the state of Utah, although the court intimates that the provision is broad enough to warrant such a construction; the decision, however, is based upon the doctrine that the rights of parties who claim under grants from the federal government must be determined as of the date of the grant, but this doctrine is expressly repudiated in this state, and it is declared that here an appropriator of water derives his right from the state and not from the national government. (*Mettler* v. *Ames Realty Co.,* 61 Mont. 152, 201 Pac. 702.)

Again it is urged that the complaint herein does not state a cause of action, and the plaintiff is not entitled to prevail, as he described his source of supply as "Holloron gulch," a term not used in the statute. This assertion has no merit; the term "gulch" is but the western synonym of "ravine." It is defined by Webster as "a deep or precipitous cleft, esp. the sharply hollowed out bed of a torrent or intermittent stream; a ravine, a deep gully. Western U. S."

We are of opinion that, under our statute, under the authorities and on principle, the water in question, having

lost its character as waste, seepage, or percolating water, and having become a "watercourse" in a well-defined channel, where it had flowed for more than twenty years, mingled with such waters from a natural source as flowed in the natural channel, and has furnished a never failing supply of water for the development of valuable grain lands, was a proper subject of appropriation, regardless of the original source of the water at a point distant from this watershed or the fact that the flow was not, during the early years of the life of the stream, continuous throughout the year.

For the reasons stated, the judgment is affirmed.

Mr. Chief Justice Callaway and Associate Justices Galen, Ford and Angstman concur.