WEST SIDE DITCH CO. et al., Respondents, *v.* BENNETT et al., Appellants.

(No. 7,746.)

(Submitted March 17, 1938.   Decided April 1, 1938.)

[78 Pac. (2d) 78.]

*Mr. J. B. C. Knight* and *Mr. S. P. Wilson,* for Appellants, submitted a brief; *Mr. Wilson* argued the cause orally.

424

*Mr. W. J. Paul,* for Respondents, submitted a brief, and argued the cause orally.

426

MR. JUSTICE ANGSTMAN delivered the opinion of the court.

Plaintiffs brought this action to establish a prior right of use of the waters of Dry Modesty Creek and Quinlan slough. They alleged a right to 300 miner's inches as of the year 1900. The West Side Ditch Company is a corporation owning a ditch known as the West Side ditch, which carries water for irrigation and other domestic purposes to its stockholders; the other plaintiffs are its stockholders.

The court made findings of fact which fairly disclose the important facts as follows:

428

"IV. That there is a small stream or creek known and called Dry Modesty Creek which for many years prior to the beginning of this action and since has run across the lands of the defendant J. A. Bennett described in his answer from the southwest corner of said lands in a direction northeasterly towards the northeast corner of said lands, where it would and does naturally empty into what is known and called the Deer Lodge River. That said Dry Modesty Creek was at the time of the commencement of this action and was for a long time prior thereof, and now is, a natural watercourse which does not flow a continuous stream of water throughout its entire course at all periods of the year but dries up entirely occasionally and at particular seasons of the year and especially after the spring rains have ceased and after the snow and ice in the mountains have melted. It flows water during the early spring of each year and during freshets and in times of rainfall and snowfall and of melting snow and ice. And since about the year 1893 has flowed into the said Dry Modesty Creek from the upper end of said stream about three miles west of defendant J. A. Bennett's lands which said water rises and comes from and is produced by and from the seepage of percolating waters caused by the irrigation of lands situated on said high lands and westward from the said lands of defendant J. A. Bennett, and also from the wet and marshy lands of defendant J. A. Bennett hereinafter described.

"V. That upon the lands of the defendant J. A. Bennett, and adjacent to and as a portion of the lower end of Dry Modesty Creek, lies what is commonly known and called the Quinlan Slough. That said slough covers several acres of that portion of the defendant J. A. Bennett's land lying immediately west of and adjacent to the right of way of the Northern Pacific Railway Company, which said railway company's right of way extends across the lands of said defendant J. A. Bennett. That said several acres form a basin or depression in said lands where water collects, and from which there flows a continuous stream of water during all seasons of the year and particularly during the irrigating season of each year. That said Quinlan Slough

is supplied by water from Dry Modesty Creek, spring waters arising upon the lands of defendant J. A. Bennett and lands adjacent thereto, melting snows, spring rains, seepage water, subsurface water and waste water emptied into Dry Modesty Creek from irrigated lands lying to the west of and above the lands of defendant J. A. Bennett, which waters flow down Dry Modesty Creek and overflow into the Quinlan Slough. That said Quinlan Slough has a well-defined basis, with bed and banks, and has a large supply of running water therefrom which finds its way into the Deer Lodge River. That said Quinlan Slough and the lower part of Dry Modesty Creek are so situated that the waters of either body of water may be emptied into the other and at high-water season both said slough and said stream constitute and are one body of water with a large stream of water flowing therefrom into the Deer Lodge River.''

The court also found that prior to the beginning of this action waters carried on to higher lands and to the west of that belonging to defendant Bennett for the purpose of irrigating the same sank thereon and therein and flowed eastward beneath the surface of the earth, but not in any well-defined channel, and that such waters reappeared by percolation and seepage in and upon the lands of the defendant Bennett and the adjoining lands to the northward.

The court further found: ''That said seepage waters and percolating waters so increasing each year, caused wet and marshy tracts of land upon defendant J. A. Bennett's land described in his answer, one of which wet and marshy tracts lies to the north and west of Dry Modesty Creek on said defendant J. A. Bennett's land, and said wet and marshy tract discharges a large flow of water therefrom into the channel of Dry Modesty Creek, and that said seepage water and percolating water rising upon the lands to the west of said defendant J. A. Bennett's land, and in and upon said defendant J. A. Bennett's land, greatly increase the flow of water in said Quinlan Slough and in Dry Modesty Creek, and that long prior to the commencement of this action, for the purpose of diverting said percolating water and seepage water, and surplus water, and the waters naturally

flowing in Dry Modesty Creek, and other wet and marshy places upon defendant J. A. Bennett's land, to the Quinlan Slough so that the same might more readily drain off to the Deer Lodge River, the predecessors in interest of said defendant J. A. Bennett on or about the 10th day of July, A. D. 1901, in order to drain said marshy and wet lands lying to the north and west of said Dry Modesty Creek, and other lands of defendant J. A. Bennett described in his answer, constructed a ditch and did drain said marshy ground through the same and therefrom to the southeast of said marshy lands, and constructed said ditch to and across said Dry Modesty Creek a distance of about half a mile to a low point on said defendant J. A. Bennett's lands, now commonly known and called the Quinlan Slough. That said waters collecting by seepage and percolation, as aforesaid, upon the lands of defendant J. A. Bennett, were carried from said wet and marshy ground lying to the north and west of Dry Modesty Creek to said Dry Modesty Creek, and were co-mingled with the waters flowing in said Dry Modesty Creek, and that all of said waters, including the entire flow of Dry Modesty Creek, were diverted by means of said drain ditch to and into the Quinlan Slough, and that ever since said date of July 10, 1901, said waters of said wet and marshy ground, and springs to the north and west of said Dry Modesty Creek, together with melting snows, flood waters, freshets, rains and run-off water naturally supplying the flow of said wet and marshy ground, and the water naturally flowing in Dry Modesty Creek during the irrigating season of each year have been carried by means of said drain ditch from said lands of defendant J. A. Bennett described in his answer to said Quinlan Slough and from said Quinlan Slough in a well-defined channel to the Deer Lodge River.''

The court also found that about November 4, 1900, the plaintiff West Side Ditch Company, and its predecessors in interest, appropriated and diverted 200 miner's inches of the waters of Dry Modesty Creek and Quinlan slough, and applied the water to a beneficial purpose, and have so used it continuously ever since. It likewise found that the defendants appropriated and

diverted 200 miner's inches on or about October 1, 1925, for use upon their lands. As conclusions of law the court found that plaintiffs were entitled to 200 miner's inches as of November 4, 1900, and the defendants to 200 miner's inches as of October 1, 1925. The defendants appealed from the judgment.

On some points the evidence was conflicting, but we cannot say that it preponderates against the findings of the trial court. In fact, defendants do not question the sufficiency of the evidence to support the findings. Their contention is that plaintiffs' prior right should be limited to the natural flow of Dry Modesty Creek, excluding the water brought into it and into the Quinlan slough by the drain ditch constructed on the land of defendant Bennett.

The only complaint made by defendants of the findings is that the court should have found, pursuant to a request made by them, the amount of water drained by Bennett off the swamp area on his land into Quinlan slough, and the amount of water naturally flowing in Dry Modesty Creek, it being their contention that plaintiffs are entitled only to priority in the latter amount which is capable of ascertainment.

"The mere fact that this water has its source on land now owned by plaintiff does not of itself necessarily give him the exclusive right thereto, so as to prevent others from acquiring rights therein under the laws of this state." (*Quinlan* v. *Calvert*, 31 Mont. 115, 77 Pac. 428, 429.)

At the time plaintiff ditch company made its appropriation, section 4840 of the Revised Codes of 1907 was in effect, reading: "The right to the use of any unappropriated water of any natural stream, water course, spring, dry coulee, or other natural source of supply, and of any running water flowing in the streams, rivers, canyons and ravines of this State, may hereafter be acquired by appropriation." There is evidence here that the waters in question constituted a watercourse, within the meaning of section 4840. The Quinlan slough and Dry Modesty Creek constituted the natural drainage channel of the watershed into Deer Lodge River. Plaintiff's right to appropriate the waters in question existed by virtue of section

432

4840 and by virtue of the holding of this court in the case of *Popham* v. *Holloron,* 84 Mont. 442, 275 Pac. 1099, 1102, where we said:

"The main source of supply of all western streams is, primarily, the melting of snow and the fall of rain in our mountains and foothills, collecting each year in their accustomed channels and thence finding their way to the streams; this is a more permanent source than 'mere surface water' diffused over the land by rains and melting snow. (Farnham on Waters, 1559.) Such waters, thus forming a watercourse and flowing with regularity from year to year, although the channel may be dry for the major portion of each year, are a proper subject of appropriation (*Borman* v. *Blackmon,* 60 Or. 304, 118 Pac. 848; *Los Angeles Cemetery Assn.* v. *Los Angeles,* 103 Cal. 461, 37 Pac. 375), and where such waters did not originally collect and flow down the channel, if through the instrumentality of man they have been made to do so and, through years of so flowing have acquired a permanent character as the natural drainage of the watershed, the original manner of the creation of the stream is immaterial; it is a 'watercourse' with all the attributes of one wholly natural (*San Gabriel Valley Country Club* v. *Los Angeles County,* above [182 Cal. 392, 188 Pac. 554, 9 A. L. R. 1200]; *City of Reading* v. *Atlhouse,* 93 Pa. 400).

"Where, also, vagrant fugitive waters have finally collected and reached a natural channel and thus lose their original character as seepage, percolating, surface, or waste waters, and flow with such regularity as above described, whether from rains raising the surface of a lake until it overflows (*Duckworth* v. *Watsonville Water & Light Co.,* 150 Cal. 520, 89 Pac. 338), seepage and percolation forming springs (*Le Quime* v. *Chambers,* 15 Idaho, 405, 98 Pac. 415, 21 L. R. A. (n. s.) 76), surface water collecting in a canyon (*Denver, T. & Ft. W. R. Co.* v. *Dotson,* 20 Colo. 304, 38 Pac. 322), artificial water over which the creator has lost control (*Hagerman Irr. Co.* v. *East Grand Plains Drainage District,* 25 N. M. 649, 187 Pac. 555), water from artesian wells accidentally developed while drilling for oil (*De Wolfskill* v. *Smith,* 5 Cal. App. 175, 89 Pac. 1001), or water of a slough

fed by seepage from irrigation (*McPhee* v. *Kelsey,* 44 Or. 193, 74 Pac. 401, rehearing 44 Or. 203, 75 Pac. 713), the waters flowing in such natural channel constitute a watercourse within the meaning of the law of water rights.''

This holding was adhered to in *Rock Creek Ditch & Flume Co.* v. *Miller,* 93 Mont. 248, 17 Pac. (2d) 1074, 1078, 89 A. L. R. 200, in *State ex rel. Mungas* v. *District Court,* 102 Mont. 533, 59 Pac. (2d) 71, and in *Wills* v. *Morris,* 100 Mont. 514, 50 Pac. (2d) 862.

Defendants contend that they by their own labors developed ██ the larger part of the waters of Quinlan slough through their drainage system. The record does not bear out this contention. The theory of a development of a new water supply ''contemplates the increase of a stream occasioned through the exertions of man directed to that end, and does not contemplate accessions to the stream through the processes of nature, as by percolating waters.'' (*Rock Creek Ditch etc. Co.* v. *Miller,* supra.) Here, even without the drain ditch, the waters of the swamp would have found their way into Dry Modesty Creek and the Quinlan slough. The only purpose of the drain ditch was to facilitate the movement of the waters collected in the swamp to the Quinlan slough, and thence, except for the appropriation of plaintiff company, to the Deer Lodge River. Defendant Bennett and his predecessors in interest, by their drainage system, were desirous of draining their lands and getting the water off of the land. This was accomplished by their drainage system. The waters were conducted to the Quinlan slough, where they ran off in a channel toward the Deer Lodge River, where they finally would have drained were it not that plaintiff intercepted them by this ditch. Plaintiff here made beneficial use of the waters from 1900 to the present time. Bennett in 1925 for the first time attempted to make a beneficial use of any of the waters. In contemplation of law, the drainage system of defendant Bennett and his predecessors in interest amounted but to a change of the channel of Dry Modesty Creek.

The waters were subject to appropriation in 1900, at the time plaintiff applied them to a beneficial use, and hence the trial

court was correct in finding that plaintiff had a valid appropriation as of 1900, and that it is superior to any right of defendants.

Judgment affirmed.

MR. CHIEF JUSTICE SANDS and ASSOCIATE JUSTICES STEWART, ANDERSON and MORRIS concur.

Rehearing denied April 19, 1938.