MEINE, ET AL., APPELLANTS, v. FERRIS, ET AL., RESPONDENTS.
No. 9070.
Submitted May 1, 1952. Decided August 16, 1952.
247 Pac. (2d) 195.

212

Mr. John Collins, Messrs. Collins and Burns, Dillon, for appellants.

Mr. W. G. Gilbert, Dillon, for executor Ferris.

Mr. Leonard A. Schulz and Mr. W. G. Gilbert, Dillon, for Clara Ferris, et al.

Mr. Collins and Mr. Schulz' argued orally.

MR. JUSTICE FREEBOURN:

Plaintiffs, as owners of certain arid lands in Beaverhead county, brought action against defendants, also arid land owners, to establish rights to certain waters from three sloughs known as the Willard Slough, Middle Slough and Back Slough.

From the findings and judgment of the trial court plaintiffs appealed.

Plaintiffs contend that the waters in such sloughs form living streams, the waters of which they need, are beneficially using, and are entitled to by virtue of prior appropriations. These waters are carried by three ditches, one from each slough, which are on defendants' lands. Plaintiffs contend that defendants are interfering with and depriving them of the full use of such waters. Defendants deny such contentions.

The evidence tends to show that the waters of the Willard Slough and the Back Slough constitute natural water courses with living streams.

A natural water course is " 'a living stream with defined banks and channel, not necessarily running at all times, but fed from other and more permanent sources than mere surface water' ". Popham v. Holloron, 84 Mont. 442, 275 Pac. 1099, 1102, quoting from Le Munyon v. Gallatin Valley Ry. Co., 60 Mont. 517, 199 Pac. 915. See also Doney v. Beatty, 124 Mont.

41, 220 Pac. (2d) 77; Heckaman v. Northern Pac. Ry. Co., 93 Mont. 363, 20 Pac. (2d) 258.

Plaintiffs' evidence tends to show that the Willard Slough is fed by natural springs, seepage, surface drainage and waste water from the West Side Canal; that it is "a natural waterway and water course;" that "the water naturally followed a channel which was cut down to gravel or rock," with water running the year round.

Defendant Edgar F. Ferris, Jr., speaking of the Willard Slough, said: If they were able to dry up their waste ditch at their headgate and remove all water therefrom, there would still be flowing in the Willard Slough, where it enters the Meine land, "around fifty to sixty inches of water." He said when he came to the lands in 1934 all of plaintiffs' ditches were in the same position as they are now, and that water in the Willard Slough naturally ran down to plaintiffs' ditch.

As to the Back Slough plaintiffs' evidence tends to show that it is a running stream of water; "there was a natural water course there. It was swampy and marshy in places on either side of the natural stream;" the water comes from springs; the water "runs the year around." A quarter of a mile below the Ferris fence "it first begins to show cut banks and open running water in a well-defined stream," with a channel "six or eight feet wide." There were trout in the Back Slough.

Speaking of the Back Slough, defendant, Edgar F. Ferris, Jr., said: That there is a running stream of water, "when it gets down to the point where it converges with the other one." He said below the confluence of the south and north fork of the Back Slough "the channel is a distinct channel" and "maybe ten inches of water seeping through" and "starting to run there;" the channel being about "three to four feet" wide, and "four feet" in depth; "it runs directly to the road and that is at a point where Mr. Meine's ditch picks it up."

Defendants' witness, Lee Schuller, testified there was a definite channel in the Back Slough below the Ferris road, with

running water, which he guessed was "between ten and twenty inches."

R. M. Barrett, witness for defendants, testified that there was running water where the road intersects the Back Slough. He said, water "runs down through that draw which would be in the general direction of the Back Slough" and "there is a channel a short distance above the road;" "it may be one-quarter or one-half mile above where you cross the road and from that wash down there is a pretty well defined channel;" "there is a channel below the road leading across the slough;" and "there is a channel above the road."

According to plaintiff, Meine, the Middle Slough did not have a continuous flow of water; "after the irrigation water was shut off and the seepage from that would cease flowing, there would not be any more water there the rest of the winter;" it would begin to flow again "shortly after the irrigation season began, June 1, I would say." He said the source of this water "was Ferris's waste water after he had finished irrigating." He did not claim the water until Ferris was through with it.

Of the Middle Slough, plaintiff, Lucy Hayden, said, when asked if there was a defined water course, "if you mean a creek with caved in banks and a gravelly bottom, there is not anything that way I have seen." She said it had no definite banks and "is a swale." She thought the water was mostly "run-off from irrigation and rain water and snow water and there might be a certain amount of seepage." Speaking as to the time of trial, she said "there was no water running" and there was no water in the ditch. She said the water from the Middle Slough ran into plaintiffs' ditch for a period of "maybe two weeks."

As to the water of Willard Slough the court found that the West Side Canal, formerly known as the Beaverhead Canal Company, prior to 1898, constructed a waste gate in the east bank of the canal, through which waste waters were occasionally discharged into the Willard Slough.

The court found that in 1903 plaintiff's predecessors appro-

priated five cubic feet or two hundred miners' inches of such waste waters so discharged into Willard Slough, conducting such waters through ditches on defendants' lands and used such water beneficially in irrigating the plaintiffs' lands.

In addition the court found that prior to the year 1903 plaintiffs' predecessors constructed ditches from the channel of Willard Slough, by means of which "they did appropriate such waters flowing in the channel of Willard Slough as were from time to time available at the heads of their ditches and did make beneficial use thereof in and about the irrigation of lands belonging to them," the exact amounts of such water being not ascertainable from the evidence.

Regarding defendants' interest with respect to any appropriation of the waters of the Willard Slough, the trial court found that predecessors of defendants· probably appropriated the waters accumulated or flowing in the Willard Slough but the evidence was entirely insufficient to warrant a finding "as to either the right or the amount thereof."

As to the waters of the Middle Slough and Back Slough, the court found that sometime more than ten years before the service and filing of defendants' answer herein, the exact date of which the court cannot determine from the evidence herein the predecessors of plaintiffs constructed ditches from the Upper or Back Slough and the Middle Slough, by means of which water, which had and did from time to time thereafter accumulate therein, was conveyed by plaintiffs and their predecessors to and upon the lands owned by them and made a beneficial use thereof. In this connection the trial court further said: "That for some time prior to the commencement of this action plaintiffs have claimed the right to use all of the ditches tapping the three water courses hereinbefore referred to as Upper or Back Slough, Middle Slough and Willard Slough, and from time to time have done work consisting of cleaning, repairing and possibly enlarging and extending the same, the amount of which the court is unable to determine from the evidence, and from time to time defendants have objected to

216

the work which was being carried on by plaintiffs."

The evidence tends to show that ever since 1903 plaintiffs ▮ and their predecessors have taken, continuously, all of the waters of the Willard, Middle and Back Sloughs and have conveyed and conducted such waters by and through the same and now existing ditches, to their lands where they have beneficially used such waters in irrigating such lands; and that all of such waters are needed to irrigate such lands; plaintiff Meine having 250 to 260 acres of land and plaintiffs Haydens having 370 acres of land, all susceptible of irrigation.

The court erred in denying plaintiffs' requests Nos. 4 and 5 for findings which are in conformity with and justified by the above evidence, as pointed out in appellants' assignment of errors 1 and 2.

The evidence justifies the conclusion, and it is apparent from ▮ the judgment that the trial court reached the same conclusion that plaintiffs, by reason of prior appropriation and continued use, are entitled to all of the waters in the Willard, Middle and Back Sloughs, with certain exceptions made by the court.

"As between appropriators the one first in time is first in right." R. C. M. 1947, sec. 89-807.

"The doctrine of appropriation extends the right to the use ▮▮ of the waters flowing in a natural stream to riparian and nonriparian lands alike * * * Furthermore, this doctrine sanctions the right of an appropriator to the use of all the waters of a stream, to the exclusion of riparian proprietors and junior appropriators, if the entire flow of the stream has been appropriated by him * * * Another rule peculiar to the doctrine of appropriation as distinguished from the doctrine of riparian rights, finds expression in the maxim, 'First in time, first in right,' or, in other words, priority of appropriation confers superiority of right (1 Wiel on Water Rights, sec. 299), and that, too, without reference to the character of the use, whether natural or artificial (Id., sec. 378)" Mettler v. Ames Realty Co., 61 Mont. 152, 159, 160, 201 Pac. 702, 703.

The exceptions referred to are waters from the West Side Canal and Schuler Springs, which defendants permit to run into Willard Slough and, having mingled such waters with the waters of the slough and using the slough as a waterway, reclaim amounts of water from the slough equal to that permitted to run into the slough.

R. C. M. 1947, sec. 89-804, provides: ''The water appropriated may be turned into the channel of another stream, or from a reservoir into a stream and mingled with its waters, and then reclaimed; but in reclaiming it, water already appropriated by another shall not be diminished in quantity, nor deteriorated in quality.''

'' 'When an appropriation is made of the water of a stream, ▮ the rights of the appropriator are limited to the natural condition of the stream at the time the appropriation is made, and he has no interest in improvements subsequently made which increase the supply of water flowing in it. Therefore, if by his own exertions another increases the available supply of water in the stream, he has a right to appropriate and use it to the extent of the increase.' '' Beaverhead Canal Co. v. Dillon, etc., Co., 34 Mont. 135, 140, 85 Pac. 880, 882, quoting from 3 Farnham, Waters & Water Rights, sec. 672d, p. 2086.

Certain it is that the defendants, by change in their systems ▮ of cultivation or irrigation, cannot take from the Willard Slough more water than equals that which they put in from the West Side Canal and Schuler Springs.

Nor do we read the findings or judgment of the trial court as allowing defendants to do more.

We have examined the other errors assigned and find no merit in them.

For the reasons stated the lower court is directed to correct its findings and decree to conform to this decision. When this is done the decree will be deemed affirmed.

MR. CHIEF JUSTICE ADAIR, and ASSOCIATE JUSTICES METCALF, BOTTOMLY and ANGSTMAN, concur.