[Civil No. 1622.   Filed July 2, 1919.]

[181 Pac. 952.]

## J. B. WEDGWORTH and B. F. WEDGWORTH, Appellants, v. J. W. WEDGWORTH, Appellee.

1. PLEADING — INDEFINITENESS — SUFFICIENCY AGAINST GENERAL DEMURRER.—In an action to enjoin interference with the flow of irrigating water in a ditch, if the description of the ditch in the complaint was not sufficiently specific to inform defendants as to its location, or to designate which of several ditches might be referred to, the remedy was by motion to make the complaint more definite and certain, and as against general demurrer it was sufficient.

2. WATERS AND WATERCOURSES—ACQUIESCENCE IN USE OF DITCH—ESTOPPEL TO DENY RIGHT.—Long-continued use by plaintiff of a ditch to conduct water purchased by him from an irrigation company, such use being under a claim of absolute and permanent right, and acquiesced in by defendants, not only by silence but by affirmative acts and conduct, *held* to give rights amounting to more than a mere revocable license; the doctrine of estoppel by acquiescence applying to prevent defendants from denying plaintiff's right.

3. WATERS AND WATERCOURSES — IRRIGATION — "SURPLUS WATER."— Surplus water is not subject to prior appropriation for any use, so that any property right is established by such appropriation and use, "surplus water" being water running off from ground which has been irrigated; water not consumed by the process of irrigation; water which the land irrigated will not take up; waste water.

4. WATERS AND WATERCOURSES—IRRIGATION—WASTE WATER.—If waste water runs upon land, the owner of the land may capture and use it, but that is the limit and extent of his right and he is not entitled to relief which would impose on the former user of the water any duty to cause water to be wasted, or to require the continuance of its flow off the premises.

5. WATERS AND WATERCOURSES — IRRIGATION — WASTE WATER—DAMAGES.—No damages recognized by the law can result to an appropriator from interference with the flow of surplus or waste water from another's irrigated land.

[As to estoppel by acquiescence, see note in 134 **Am. St. Rep.** 1024.]

APPEAL from a judgment of the Superior Court of the county of Maricopa.   F. H. Lyman, Judge.   Modified and remanded, with instructions.

Mr. Benton Dick and Mr. J. E. Nelson, for Appellants.

Mr. J. L. Gust, for Appellee.

PATTEE, Superior Court Judge.—This is an action brought by J. W. Wedgworth, the appellee and plaintiff below, against the appellants, defendants below, to enjoin interference with the flow of irrigating water in a ditch over the defendants' lands to the plaintiff's land, and for damages claimed to have been caused by such interference. The defendant B. F. Wedgworth does not appear to be the owner of any lands, and apparently is made a party because he personally interfered with the flow of water, acting on behalf of his codefendant. The parties will be referred to hereinafter as plaintiff and defendant. The plaintiff obtained a decree granting the injunctive relief sought and awarding him damages in the sum of $250. From this judgment the defendants appeal to this court.

The plaintiff is the owner of 80 acres of land situated in section 21, township 1 south, range 4 west, in Maricopa county. The defendant J. B. Wedgworth occupies and cultivates the south half of section 16, said township and range, lying north of the plaintiff's land. The land of the plaintiff is slightly lower than the land of the defendant J. B. Wedgworth, so that water from the irrigating system supplying the lands reaches plaintiff's premises through ditches over land of J. B. Wedgworth, and by a ditch on lands adjoining the same. The sharply contested question is whether the plaintiff had acquired a right to receive water through a certain ditch designated in the testimony as the "Center ditch" over defendant's lands. The trial court found that the plaintiff had acquired the right to conduct water through that ditch and had also acquired the right to waste water and to conduct such waste water through the same ditch to his lands, and to irrigate 30 acres of land; that the defendants interfered with such rights; and thereupon rendered the following judgment:

"And by reason of the law and the findings aforesaid, it is ordered, adjudged, and decreed that the defendants, and each of them, and their agents, servants, employees, and attorneys, be, and they hereby are, perpetually enjoined and restrained in the following respects, to wit:

"(1) From interfering with the plaintiff in conducting or receiving irrigation water for his premises above described through the irrigation ditch across the premises of the defendants, commonly known as the Center ditch, and hereinabove described, at such reasonable times as will not unnecessarily interfere with the defendant's use of said ditch, for the purpose of irrigating their own premises above described, and in such reasonable manner as will not overflow or otherwise damage the premises of defendants.

"(2) From interfering with the plaintiff in entering upon the premises of the defendants for the purpose of cleaning said ditch or making such repairs thereto as from time to time may become necessary, in such manner as will not damage defendants' premises or the crops thereon, except in such minor respects as is necessarily incident to such entry, cleaning and repairing.

"(3) From preventing surplus waters from collecting or flowing in said ditch above described in the manner that the same have heretofore been accustomed to collect and flow therein and from interfering with the plaintiff in receiving such surplus water from said ditch and irrigating his premises above described therefrom, to the extent of twenty acres thereof. . . .

"And it is further ordered, adjudged, and decreed that the plaintiff have and recover from the defendants, joint and several, judgment for the sum of $250 damages, and his costs," etc.

The ditch through which the plaintiff claimed the right to conduct water was described in the complaint generally as a ditch constructed through section 16. To this complaint a general demurrer was interposed, and the overruling of this demurrer is assigned as error. The only ground raised in the court below and in this court on appeal is that the ditch is not described with sufficient particularity. If the description was not sufficiently specific to inform the defendants as to the location of the ditch mentioned, or to designate which of several ditches might be referred to, the remedy was by motion to make the complaint more definite and certain in that respect. As against a general demurrer, the complaint is sufficient.

It is also assigned as error that the court erred in finding and adjudging that the plaintiff had a right to conduct irrigating water through the so-called Center ditch. The evidence

upon this question, and upon practically every issue in the case, was very conflicting; but there was evidence tending to prove and sufficient to justify the trial court in finding that for some years prior to 1910 some portions of the 80 acres of land now owned by the plaintiff had been irrigated and cultivated to some extent and that for several years prior to the time the plaintiff acquired title to his land the defendant J. B. Wedgworth had occupied and irrigated a portion of that land, all from waters conducted through the Center ditch; that early in the year 1910 plaintiff acquired title to the 80 acres since owned by him, and ever since, with the exception of one-half year, plaintiff has purchased from the Buckeye Irrigation Company sufficient water to irrigate ten acres of land, and such water during the year 1910 and subsequent years until September, 1916, had been conducted to the plaintiff's premises through the ditch constructed through section 16, designated as the Center ditch; that the plaintiff had caused this water to be conducted through that ditch under a claim of absolute and permanent right to do so, hostile to any adverse claim by the defendants or any other person, and that such claim of right on his part had been acquiesced in by the defendants; that directions had been given by the plaintiff and defendant J. B. Wedgworth to the Buckeye Irrigation Company respecting the time and manner of turning the water used by the respective parties into the ditch; that the plaintiff had furnished labor and expended money each year to maintain and keep in repair the ditch, and, when controversies had arisen between the defendant J. B. Wedgworth and third parties, the plaintiff had been called upon by the defendant J. B. Wedgworth to come to his assistance and maintain their joint right to the use of the ditch; that the plaintiff had purchased and entered into the possession of the land during the year 1910, and since that time has brought additional land into cultivation at considerable expense; and that his claim to the absolute and permanent right to conduct the water purchased from the Buckeye Irrigation Company through the ditch had never been questioned until September, 1916, when defendants summarily prevented the flow of such water to the plaintiff's premises. And generally the testimony warrants the conclusion that the plaintiff had cultivated his land and adjusted his farming operations in conformity with his claimed right to have the water delivered to him through the Center ditch.

It appears from the evidence that there is another ditch, designated in the testimony as the East ditch, running around the eastern boundary of section 16, and hence on to some portion of plaintiff's land, and it is claimed by the defendants that the plaintiff's water has been heretofore conducted through this ditch and should hereafter be so conducted. The evidence, however, justified the conclusion obviously reached by the court below that the water had been conducted through the Center ditch, and it also justified the conclusion that it would be impracticable, if not impossible, to conduct the water purchased by the plaintiff from the Buckeye Irrigation Company through the ditch known as the East ditch.

The long-continued use by the plaintiff of the Center ditch for the purpose of conducting the water purchased by him from the Buckeye Irrigation Company under a claim of absolute and permanent right, under the circumstances above stated, amounted to more than a mere revocable license. The right claimed by the plaintiff was not temporary in its character, but evidently based upon the assumption that he had such right and followed by conduct on his part consistent therewith. The acquiescence on the part of the defendant J. B. Wedgworth was not merely by silence, but by affirmative acts and conduct on his part. On the basis of such right, the plaintiff expended money and adjusted his affairs, so to speak, with reference to such right. In this situation the doctrine of estoppel by acquiescence applies, and the defendants are estopped from denying the right claimed by the plaintiff. *Miller* v. *Douglas,* 7 Ariz. 41, 60 Pac. 722; 2 Kinney on Irrigation and Water Rights, §§ 1126, 1127. The court below therefore properly enjoined the defendants from interfering with the right of the plaintiff to conduct the water purchased by him from the Buckeye Irrigation Company through the Center ditch.

The appellants make the following assignment of error:

"The court erred in finding, and entering judgment on said finding, that plaintiff for many years has received surplus waters flowing or collecting in the ditch above described, and has applied same to beneficial use in the irrigation of approximately twenty acres, and the plaintiff has the right to continue to receive such surplus water from said ditch to irrigate said twenty acres."

Surplus water is not subject to prior appropriation for any use so that any property right is established by such appropriation and use. ''Surplus water'' must be understood as water running off from ground which has been irrigated; water not consumed by the process of irrigation; water that the land being irrigated will not take up, but the water that flows off the lands; waste water.

We held in *Lambeye* v. *Garcia*, 18 Ariz. 178, 157 Pac. 977, that one using waste water had no vested right in the use of such water, and therefore the user could not restrain another from diverting the waste water from the former user's premises. We adhere to this proposition. The identical question arises under the facts found in this case. The provision of the decree enjoining and restraining the defendants from ''preventing surplus waters from collecting or flowing in the said ditch above described, in the manner that the same have heretofore been accustomed to collect and flow therein, and from interfering with the plaintiff in receiving such surplus water from said ditch,'' is therefore erroneous and places a greater burden on the defendants than the law requires. If waste water runs upon the plaintiff's land, he may capture and use it; but that is the limit and extent of his right. He is not entitled to relief which would impose upon the defendants any duty to cause water to be wasted, or to require the continuance of a flow of waste water off of their premises. The assignment of error above quoted is therefore good in so far as the court adjudged the plaintiff had a right to continue to receive surplus or waste water from said ditch to irrigate 20 acres.

The court below found that the plaintiff sustained damages for the wrongful acts of the defendants in preventing him from receiving water through the Center ditch, in the sum of $250, and judgment was accordingly entered in favor of the plaintiff in that amount. The evidence justifies the finding that the plaintiff was damaged by the defendants' interference with the flow of water, but is not definite enough to show what damage was caused by the prevention of the flow of water which the plaintiff had a right to conduct through the Center ditch, and the amount of such damage as adjudged by the court is manifestly based upon the finding, set forth in the judgment, that 30 acres of land were irrigated—20 from surplus water, and the balance, 10 acres, from water purchased

from the Buckeye Irrigation Company—and that the defendants interfered with the delivery of water from both these sources, and that $250 damages resulted to the plaintiff. No damage which the law recognizes can result to an appropriator from the interference with the flow of surplus or waste water, and, it being found that 20 acres of plaintiff's land depended upon such surplus or waste water for irrigation it is not apparent how damages in the sum found could have resulted from the interference with the flow of the water purchased to irrigate 10 acres. No reason is perceived why the plaintiff might not recover such damages as were directly caused by the interference with the flow of the water purchased from the Buckeye Irrigation Company; but both the evidence and the finding are merely that the plaintiff sustained damage, without limiting it to that resulting from the interference with the flow of water to which plaintiff was entitled. That portion of the judgment awarding damages is therefore erroneous.

The judgment will therefore be modified so as to conform to this opinion, eliminating from that portion of the judgment awarding injunctive relief the language referring to the surplus or waste water; and the judgment in favor of the plaintiff for $250 is reversed, and a new trial upon the question of damages ordered. In all other respects the judgment is affirmed. If, as urged by the defendants, the judgment is too indefinite as to the time and manner of conducting the plaintiff's water through the ditch, the court below may provide in the modified decree that either party may apply from time to time for appropriate orders with respect to such matters, and that jurisdiction be retained for that purpose.

The cause is remanded to the court below, with instructions to enter a decree for injunctive relief in accordance with this opinion, and for a new trial upon the question of damages.

CUNNINGHAM, C. J., and ROSS, J., concur.

NOTE.—BAKER, J., being disqualified, the remaining members of the court called in SAMUEL L. PATTEE, Judge of the Superior Court of Pima County, to sit with them at the hearing of this case.

---

Authorities discussing the question of right to appropriate waste waters are collated in a note in 6 L. R. A. (N. S.) 952.