# GALLIO *v.* RYAN

No. 2853

April 25, 1930.                                    2S6 P. 963.

*Thatcher & Woodburn,* for Appellant:

*Powell & Brown,* for Respondent:

## OPINION

By the Court, SANDERS, J.:

In April, 1924, the plaintiff and respondent, G. Gallio, filed a complaint in the court below against the defendant and appellant, Margaret Ryan. The complaint alleges in substance that plaintiff is the owner, and in the years 1922 and 1923 was the owner and in possession of the following described agricultural land situate in Pershing County, Nevada:

The north one-half of section 10, in township 30 north, range 35 east; that said lands, without irrigation, will not produce crops of any value; that under date of February 8, 1922, plaintiff received from the state engineer of Nevada a permit based upon his legal application to appropriate waters of Star Canyon creek to be used in irrigating crops upon the premises described; that by said permit plaintiff was granted the right to appropriate and use from the waters of Star Canyon creek, a natural spring and stream in said Pershing County, Nevada, 0.4905 cubic feet of water per second; that plaintiff has in all things complied with the provisions of said permit and has used all waters obtained by him for beneficial purposes and for stock watering and domestic purposes, and that there is no water for irrigation of plaintiff's lands available from sources other than said Star Canyon creek. The complaint alleged that there has never been any adjudication of the rights of plaintiff and the other appropriators of Star Canyon creek, and that the only other appropriator is the defendant; that the defendant is the owner of real estate situate in sections 16 and 28 in township 31 north, range 35 east, and is also an appropriator of the water of Star Canyon creek; that in normal years there is sufficient water in said creek to irrigate all of the cultivated lands of both plaintiff and defendant. The complaint alleged that, in the years of 1922 and 1923, there was available from the flow of said Star Canyon creek sufficient water to irrigate all cultivated lands of plaintiff and defendant, and

sufficient water to supply the amounts designated in the plaintiff's certificate of appropriation and the appropriation of the defendant, but that during said years, in the irrigating seasons thereof, the defendant and her agents and servants, willfully and with intent to deprive plaintiff of water with which to irrigate the portions of his lands which he had planted to valuable crops at great expense, did divert the waters of Star Canyon creek, which belonged to plaintiff and to the use of which plaintiff was entitled, from the plaintiff and from the plaintiff's lands by causing the same to escape from the ditches and flow upon uncultivated sagebrush lands in enormous quantities, thereby preventing plaintiff from receiving his legal share of the water of said stream, and thereby preventing plaintiff from irrigating his lands and crops; that, by reason of the wrongful acts of the defendant, plaintiff was not only damaged by the loss of the seed he had sown and the labor of planting said lands but by loss of the valuable crops which would have otherwise accrued to him, the value of which cannot be computed and that the injury inflicted thereby was and is irreparable; that the defendant threatens to continue so to divert from the plaintiff the waters of Star Canyon creek, to which he is entitled, and to deprive plaintiff of water to irrigate his lands, and that, unless restrained by an order of court, the defendant will continue to deprive plaintiff of his share of the waters of said creek and will continue to use and waste the waters to which plaintiff is entitled and that plaintiff will lose his valuable crops and that the crops growing thereon will perish and die, thereby causing plaintiff further irreparable injury; that the lands of the defendant are so situated that it is possible for the defendant to divert the water from plaintiff and to prevent the same from reaching plaintiff's lands; that plaintiff has no plain, speedy or adequate remedy in the ordinary course of law. Wherefore, plaintiff prayed judgment for the sum of $2,000 as damages, and that the defendant and her agents and servants be, during

the pendency of this action, enjoined from taking the waters of Star Canyon creek to which plaintiff is entitled, or from causing or permitting the same or any part thereof to flow upon uncultivated or sagebrush lands, and to require the defendant to cease wasting waters of said creek and to keep her ditches in a good state of repair so that the waters of said creek will not be wasted and allowed to flow upon waste lands during the irrigation season, to the damage of the plaintiff; that upon final hearing, said injunction be made perpetual and that upon the trial the court determine the rights and relative rights of the plaintiff and defendant to the use of the waters of said creek, fixing and establishing by decree the date of priority, quantity, duty, name, and place of use, and such other matters as may be material for a complete determination of the relative rights of the parties to the use of the waters of said creek, and that the defendant be restrained from in anywise interfering with the plaintiff's enjoyment and use of his rights as determined by such adjudication and decree.

The defendant interposed a demurrer to the complaint which was overruled. Thereafter, the defendant filed her answer in which she denied, upon information and belief, the allegations of the complaint with respect to the plaintiff's appropriative right to the use of 0.4905 cubic feet per second of the water of Star Canyon creek, and specifically denied that the plaintiff was legally entitled to the use of any of the waters of said creek. She denied that the only other appropriators of the waters of said creek were the plaintiff and the defendant, and in this connection alleged that the Nevada Sheba Silver Mining Company, a corporation, is an appropriator of waters of said creek, the exact nature and extent of which was unknown. She admitted her ownership of the lands described in the complaint and her appropriation of the waters thereof, and denied that in the years 1922 and 1923 there was available from the flow of said creek sufficient waters to irrigate all the cultivated lands of the parties, and denied that in said years the

defendant, willfully, and with intent to deprive plaintiff of the waters of said creek with which to irrigate his crops, diverted and wasted the waters thereof which belonged to the plaintiff. She admitted that she did divert the waters of said creek, under and by virtue of her prior appropriation and claim to all the waters of said creek, through her ditches to, in, and upon her lands for the irrigation thereof. For further answer and by way of cross-complaint the defendant alleged in substance that she and her predecessors in interest, since the year 1862, have been, and that the defendant now is, the owner and in possession and entitled to the possession of about 720 acres, more or less, situate, lying and being in sections 10, 16, and 28, in township 31 north, range 35 east, in the county of Pershing, State of Nevada, and that for many years last past and long prior to any right or claim of the plaintiff, the defendant, by and through her predecessors in interest, was, and is now, in possession and entitled to the possession of certain portions of section 15, township 31 north, range 35 east, as the lessee thereof. She alleged that these lands are arid in character and can be made productive only by means of irrigation, and that ever since on or about the year 1862, the defendant and her predecessors in interest have, during the irrigating season of each year, diverted from said Star Canyon creek all of the waters flowing therein, and have conducted the same by means of ditches and canals to, in, and upon parts and portions of her lands described, and that she used the same for the irrigation of about 300 acres thereof. She alleged that said lands had been cultivated by the application of said waters thereon and that there has been grown thereon during said times valuable crops of hay, grain, and other produce; that the defendant is the owner and in possession and entitled to the possession, as an appropriator thereof, of all the waters flowing or to flow in said Star Canyon creek. She alleged that plaintiff claims some right, title, claim, or interest of, in, and to the waters of said Star Canyon creek adverse to the defendant and cross-complainant; that

each and every right, claim, and demand of said plaintiff of, in, and to the waters of said Star Canyon creek was and is pretended and fictitious and subordinate to the rights and claims of the defendant and cross-complainant, and that the same constitutes a cloud upon the title of the defendant, of, in, and to the waters of said Star Canyon creek and the right of the defendant to use the same. Wherefore, defendant demanded judgment and decree that plaintiff take nothing by his complaint and that the same be dismissed; that the title of the defendant in and to the waters of said Star Canyon creek be quieted and be confirmed in the defendant, and that plaintiff be adjudged and decreed to have no right, title, claim, interest, or demand therein or thereto.

The plaintiff made reply to the answer and cross-complaint of the defendant and prayed that judgment be entered as prayed in his original complaint.

Upon the issues made, the plaintiff's application or motion for an injunction pendente lite came on for hearing before the late Judge J. A. Callahan. After a full hearing, the motion was denied.

Upon the hearing it was ordered that the Nevada Sheba Silver Mining Company, a corporation, be made a party to the action. Thereafter, process was duly issued and served upon said corporation, and, it having failed to appear and answer the summons within the time prescribed by law, its default was entered. Judgment upon said order of default was incorporated in the final judgment or decree.

The case came on for trial upon its merits before Judge L. O. Hawkins without a jury. Upon the submission of the case for decision, Judge Hawkins considered that in the then condition of the record that no final decree could be entered with respect to the amount of water reasonably and economically used for the irrigation of the defendant's lands, and reopened the case for further evidence upon that question. Thereafter, the testimony of witnesses, both expert and lay, was taken upon the question as to the amount of water

necessary for the irrigation of the defendant's lands from her ditches.

The defendant, being dissatisfied with the court's decision, filed a motion for new trial. The case is now before us upon the defendant's appeal from the order denying her motion for new trial.

When not mentioned by name the parties will be designated here as plaintiff and defendant.

The appeal from the order denying defendant's motion for new trial divides itself into two parts. The first part concerns the legal sufficiency of the evidence to establish plaintiff's statutory appropriation of not to exceed 0.4905 of a cubic foot of water per second flowing in Star Canyon creek, a natural water course on the public domain, within a period of use for irrigation and domestic purposes from April 1 to August 1 of each year, with a priority of appropriation as of March 25, 1914.

Part two concerns the sufficiency of the evidence to support the findings of fact and conclusions of law adduced therefrom adjudging to the defendant and cross-complainant, Margaret Ryan, vested rights with priorities as of the year 1862 to the use of 358.75 acre feet and 232.3 acre feet at the fixed points of diversion for the irrigation of the defendant's Santa Clara ranch situate in sections 16 and 15, and $3\frac{1}{2}$ feet per acre for the irrigation of 158.6 acres of land situate within section 28 and designated defendant's Star Creek ranch or Home ranch.

The issue made by the complaint and answer as to whether the defendant in the years 1922 and 1923, willfully, and with intent to deprive plaintiff of the water to which he was legally entitled, diverted enormous quantities thereof from her ditches to his injury and damage in the sum of $2,000 is eliminated in the case by the court's decision, in which it was held that the plaintiff utterly failed to establish these allegations of his complaint.

Counsel for Margaret Ryan challenge the legality and

validity of the plaintiff's adjudicated statutory appropriation of 0.4905 cubic feet per second of water flowing in Star Canyon creek, ·or to any of the waters thereof, under and by virtue of his certificate of appropriation. It is insisted in argument in the first place that the water appropriated was waste water and therefore not subject to appropriation under our so-called water code. On the other hand, the learned trial court decided that the water appropriated by the plaintiff was surplus water flowing in defendant's ditches, which, by lapse of time, had come to be regarded as equivalent to a natural water course and the plaintiff, having constructed his ditches so as to intercept the artificial channel, or the natural depressions through which the water escaped therefrom, had brought himself within an exception of the court's own creation to our statutory law of appropriation and that plaintiff was entitled to have such rights, as he acquired by the construction of his ditches, quieted and protected by law.

These respective contentions necessitate a review of the evidence, a summary of which stated in narrative form must suffice. Star Canyon creek, as its name implies, has its source in Star Canyon in the Humboldt range of mountains. It is a small stream, variable in its flow depending primarily upon the melting of snow and the fall of rain in our mountains and foothills. If left unobstructed, it would flow easterly from its source for a distance of a few miles and then spread and disappear upon the public domain in the valley below, called Buena Vista. The only persons who claim the right to the use of the waters of said creek are the plaintiff and defendant, who claim no riparian rights, and who base their claim to the use of the waters of said creek solely upon the doctrine of appropriation which prevails in this state, both by statute and court decision.

A map of a hydrographic survey made by court order of the lands irrigated from Star Canyon creek shows that the defendant's lands are irrigated from waters flowing in several ditches constructed by the defendant

and her predecessors in interest to divert the waters of said creek to, in, and upon her two ranches. The original ditch was constructed by the defendant's earliest predecessors in interest, W. C. Gregg and Joseph Organ, in 1862 and 1889. The original ditch runs in a southeasterly direction from its original intake at a point in Star Canyon for a distance of about four miles and is used to irrigate defendant's Star Creek ranch. One other ditch, constructed by defendant in 1918, with an intake a short distance above the intake of the original, runs in a southeasterly direction for a distance of about three and one-half miles, which serves to irrigate the lands embraced within defendant's Santa Clara ranch. The defendant acquired lands through mesne conveyances between 1862 and 1918, her immediate predecessor being Peter Organ, a son of Joseph Organ.

In 1910, G. Gallio, the plaintiff, made a homestead entry upon the north ½ of section 10 in township 30 north, range 35 east, in Pershing County. According to the cultural maps in evidence he had, at the time of the commencement of this suit, under cultivation about 35 acres, and Margaret Ryan had under cultivation about 269 acres. In 1913, Gallio, in order to obtain water for the irrigation of his land being brought under cultivation, ran two ditches along the easterly and southerly boundary of the defendant's Santa Clara ranch and another ditch along the easterly boundary of the defendant's Star Creek ranch. According to his own testimony and his avowed declarations made in his application for a permit to use the waters of Star Canyon creek, he constructed said ditches to collect the drain or waste waters from the defendant's lands irrigated by laterals from her main ditches to, in, and upon the cultivated areas thereof. The waters collected by the several ditches ran into a ditch constructed by the plaintiff at a point a short distance below the defendant's ranches, continuing on down through the valley for a distance of about four miles to the plaintiff's ranch.

In March, 1914, the plaintiff made application to the state engineer for permit to appropriate 3.2 of the overflow water not used of Star Canyon creek, with a point of diversion from its source at the SW¼ of NE¼ of SE¼ of section 3, township 30 north, range 35 east. The land to be irrigated being the north ½ of section 10, township 30 north, range 35 east. The point of diversion was at the point of intersection of sections 3 and 10.

Upon his proof of application, dated September 28, 1921, for permit, the point of diversion was changed to the SE¼, SW¼, section 27, township 31 north, range 35 east. The reason assigned by the plaintiff for the change was that the waters of Star Canyon creek were flowing any and every place over the valley on account of the flat condition of the land. The plaintiff stated in his proof that there was not any regularly defined channel so a ditch had to be dug for many miles, which was done to confine the waters of the creek to one regular line to save any waste.

During the irrigating season of the years 1920 and 1921, the plaintiff complained to the defendant and to her agents that the water flowing in her ditches was being wasted and diverted in enormous quantities upon uncultivated sagebrush land and from plaintiff and his land, thereby depriving plaintiff of water to which he was legally entitled. As a result of this controversy it seems that this action was instituted.

The fact that the plaintiff ran the ditches as he did along the easterly and southerly sides of the irrigated area of defendant's lands is of itself sufficient evidence to show that the ditches were constructed for the purpose of collecting drain or waste waters caused by the defendant's irrigation system.

"Waste water," says Mr. Kinney, "may be defined to be such water as escapes from the works or appliances of appropriators without being used; or, such water as escapes from an appropriator's lands after he has made all the beneficial use thereof that is possible and which cannot be returned into the natural stream from which

it was originally taken." Kinney on Irrigation (2d ed.), sec. 661.

■■ Where "surplus water" is made up from water running off from ground which has been irrigated; water not consumed by the process of irrigation; water which the land irrigated will not take up; is waste water. It is subject to capture and use, but that is the limit and extent of the right. The user cannot impose upon the owner permitting the waste or escape of the water to cause it to be wasted or to require the continuance of its flow. Wedgeworth v. Wedgeworth, 20 Ariz. 518, 181 P. 952.

■■ The plaintiff, by his cause of action, sought to prevent, by an injunction, the defendant from diverting the water from her ditches to, in, and upon uncultivated sagebrush land, to which plaintiff alleged he was legally entitled under and by virtue of his certificate of appropriation. Where one has acquired the right to waste water from the ditches or laterals of another, he does not thereby become vested with any control of any such ditches or laterals, or the water flowing therein, nor is the owner of such ditches required to continue or maintain conditions so as to supply the appropriation of waste water at any time or in any quantity, when acting in good faith. Wedgworth v. Wedgworth, supra; Stepp v. Williams, 52 Cal. App. 237, 198 P. 661; Green Valley Ditch Co. v. Schneider, 50 Colo. 606, 115 P. 705; Mabee v. Platte Land Co., 17 Colo. App. 476, 68 P. 1058; Popham v. Holloron (Mont.), 275 P. 1099; Brosnan v. Boggs, 101 Or. 477, 198 P. 890; Garns v. Rollins, 41 Utah, 260, 125 P. 867, Ann. Cas. 1915C, 1159.

■■ These authorities are all to the effect that a claimant to waste water acquires a temporary right only to whatever water escapes from the works or lands of others, and which cannot find its way back to its source of supply; that such a use of the water does not carry with it the right to any specific quantity of water; nor the right to interfere with the water flowing in the ditches or works of others lawfully appropriating it. Kinney on Water Rights (2d ed.), sec. 661.

The author states that the authorities hold that while the water so denominated as waste water may be used after it escapes, no permanent right can be acquired to have the discharge kept up, either by appropriation or a right by prescription, estoppel, or acquiescence in its use while it is escaping, and that, too, even though expensive ditches or works were constructed for the purpose of utilizing such waste water, unless some other element enters into the condition of affairs, other than the mere use of the water.

The only element that enters into the situation, as disclosed by this record other than the mere use of the water in controversy, is plaintiff's certificate of appropriation. The documentary proof of his appropriation in evidence shows that the water applied for was surplus or overflow water from Star Canyon creek not used on the Peter Organ ranch; water going to waste; water that had been partially used.

■ Counsel for plaintiff insist in argument that the plaintiff was not concerned about the drainage of water from the Ryan fields; that all his complaint was directed to the loss or wastage of water from defendant's Santa Clara ditch and its diversion from her Santa Clara field to and upon sagebrush land outside of the boundary of her ranch. This is the substance of his cause of action. Since the plaintiff, Gallio, was not vested with any control of the defendant's ditches or laterals, or the water flowing therein, plaintiff was in no position to complain that the defendant did not continue or maintain the flow of water so as to supply his appropriation of water permitted to waste or escape at any time or in any quantity from the defendant's ditch.

■ His taking and use of the water made up from the defendant's irrigation system did not constitute an appropriation as that term is used in our statutes, as he acquired no such usufruct right in the water as to entitle him to compel the continuation of the condition furnishing him with water. Popham v. Holloron, supra. His taking and use of such water did not impose upon the owner of the ditch permitting the waste or escape

of the water to cause it to be wasted or to require the continuance of its flow (Wedgworth v. Wedgworth, supra), or prevent the owner of the land from draining it in such manner as to cut off the flow from the plaintiff. Garns v. Rollins, supra.

The learned trial court's decision upon this phase of the case was to the effect that there was no doubt as to the law that a vested right as against the person permitting waste water to escape from his land could not be acquired by the person using the same, and if the case at bar was a case solely of that kind, plaintiff could have no relief whatever. The court, however, was of the opinion that the 3.2 second feet of water as applied for in the plaintiff's application filed with the state engineer was "surplus water" and not "waste." That it was "surplus water" is true, but being "surplus water" made up from water flowing off from the defendant's irrigated lands and water not consumed by the defendant's process of irrigation, it was waste water that did not and could not find its way back to Star Canyon creek from which it was lawfully taken by the defendant.

From the inception of the trial of the case, counsel for the defendant took the position that to make a valid appropriation of water it must be diverted from a natural water course or natural body of water, and that since plaintiff's ditch did not take out from the natural channel or bed of Star Canyon creek, he had not made a valid diversion, an essential step to be taken in the appropriation of water. The trial court was of the opinion that, like practically all principles in the law, there are exceptions to the rule that the diversion must be from a natural water course or body of water. Upon this exception the court decided, found, and adjudged as follows: "That, by reason of the fact that all the waters of Star Canyon Creek have, for more than forty years last past, been diverted by the defendant, Margaret Ryan and her predecessors in interest, at all seasons of the year, through the Organ Main Ditch, the said Organ Main Ditch has, during all of said time, been,

and now is, the natural stream or channel of said Star Canyon Creek for all purposes, including the place from which an appropriation can be made."

In support of this principle of law the court in its decision cited and relied upon Wiel on Water Rights (3d ed.), sec. 60, and cases cited in notes 19 to 21, and in its decision quoted extensively from several of the cases cited. Conceding for the purposes of the argument that it is an established principle that, by lapse of time, an artificial water course may come to be regarded as equivalent to a natural one, the very authority cited, Wiel on Water Rights, holds that the rule rests upon a quasi dedication of the artificial condition *to the public*, and the essence of it is the growth of a *community* dependent upon the artificial condition. Where no such community interest, says the author, has been created, and the question is solely between a single individual and the original creator of the artificial water course or condition, the rule has no application. So, in this case, where the question is one solely between the plaintiff and the defendant, the creator of the artificial condition, the rule invoked is inapplicable.

In the statutes of 1917, chapter 190, sec. 1 (amending Laws 1913, c. 140, section 8) thereof, it is provided: "Rights to the use of water shall be limited and restricted to so much thereof as may be necessary, when reasonably and economically used for irrigation and other beneficial purposes, irrespective of the carrying capacity of the ditch; and all the balance of the water not so appropriated shall be allowed to flow in the natural stream from which such ditch draws its suply of water, and shall not be considered as having been appropriated thereby. * * * "

From the evidence we are of opinion that no valid or legal appropriation was made by plaintiff of the waters of Star Canyon creek; it is therefore unnecessary for us to determine whether or not the evidence is sufficient to show that the defendant diverted, through her ditches, more water from Star Canyon creek than

necessary for the irrigation of her lands when reasonably and economically used, or what amount of water not so appropriated by her should be allowed to flow in the natural stream, from which her ditches drew their supply of water. The judgment and decree are set aside, and the case is remanded for a new trial.

COLEMAN, J., concurring:

I concur. In my opinion the facts of this case do not bring it within the principles laid down by Mr. Wiel or any of the cases cited in support of the contention pertaining to a situation growing out of the diversion of the entire flow of water from a natural stream.

I concur in the order of reversal for the further reason that the trial court, in my opinion, erred in entering a decree awarding to the plaintiff the amount of water designated for the entire irrigation season.

Peter Organ testified that his people bought the ranch in 1869, and that he lived upon it continuously thereafter until he sold to the defendant in 1918, and that for many years antecedent to plaintiff's advent in the country he had appropriated all of the water of Star Canyon creek for irrigation purposes, and that as a rule there was not enough water in the creek in the months of July and August to irrigate his lands. He further testified that he had had under cultivation for years all of the land cultivated by the defendant after she purchased it. He did admit, however, that for a period all of the land was not cultivated or irrigated by him. Nonuser of water, once appropriated, does not per se constitute abandonment. Abandonment must be proven, and there is no contention that there was an abandonment.

John Ryan and Ed Ryan, sons of the defendant, also testified that no land had been cultivated by the defendant except what had been under cultivation by Organ, and that during the months of July and August there was not enough water in the stream to irrigate their crops.

The testimony of J. A. Miller, an engineer, and others,

shows that the water is highest in April and May, and that it decreases in volume very rapidly as the summer season advances. There is no conflict of the testimony, as I read it, to the effect that there is not enough water in the stream in July and August to irrigate the cultivated lands of the defendant.

I think it is true that there is a larger volume of water in the stream in April and May, and possibly during a portion of June, than the defendant can economically use, but the waste water from defendant's ranches during those months did not form a natural stream, or any other kind of a stream, until plaintiff ran some ditches about the year 1913, or thereafter, to catch this water.

I can see no theory upon which the judgment and decree can be affirmed.

DUCKER, C. J., dissenting:

I dissent. The majority ruling, in my opinion, ignores the force of the findings of the trial court. It is also wrong in deciding that the respondent made no valid appropriation of any of the waters of Star Canyon creek. Among other things the court found in substance that respondent applied to the state engineer for permission to divert and use surplus waters of Star Canyon creek, and was thereafter granted a certificate of appropriation giving him the right to divert and use, in the irrigation of the lands described in his answer and for domestic and stock watering purposes, 0.4905 second feet of the surplus and unappropriated waters of Star Canyon creek; that the waters diverted by respondent were surplus and unappropriated waters of said stream; that the total seasonal flow of Star Canyon creek in normal and abnormally wet years is more than sufficient to satisfy the rights of both appellant and respondent in and to the use of the waters thereof; that the Organ main ditch now constitutes, and for more than forty years last past has constituted, the natural stream and channel of said Star Canyon creek for all purposes, including the place from which an appropriation can be made.

There is ample evidence to support these findings and they ought, therefore, under a well-settled rule to bar this court from holding that the waters of Star Canyon creek, filed upon and diverted by respondent, were waste waters in which he could acquire no right by appropriation.

The right of the trial court to find from the evidence that the Organ main ditch became the natural channel and stream for all purposes is supported by both reason and authority. Hollett v. Davis, 54 Wash. 326, 103 P. 423; Wiel on Water Rights (3d ed.), vol. 1, sec. 60, and cases cited in notes 19 and 21; Gould on Waters (3d ed.), sec. 225. The reasoning of Judge L. O. Hawkins, the trial judge, upon this phase of the case is most persuasive. He said:

"Defendant (appellant) has cited authority to the effect that to make a valid appropriation of water it must be diverted from a natural water course or natural body of water, and that since plaintiff's (respondent's) ditch does not take out from the natural channel of Star Canyon Creek, he has not made a valid diversion. However, like practically all principles in law there are exceptions to the rule that the diversion must be from a natural water course or body of water.

"If the law were as contended for by defendant there could never be any valid appropriation of water from Star Canyon Creek below the Ryan Dam therein, the evidence showing that for more than forty years no water has run in the old channel of Star Canyon Creek below that dam, except in times of extremely high waters when for a short time some water would break over the solid dam of the defendant. By the building of this solid dam in the Creek more than forty years ago and its maintenance to the present time, the channel of said creek has been changed from its original location, and by the continual use of the Ryan ditch below said dam for the entire flow of the stream in and out of irrigation season, winter and summer, the artificial ditch has become the natural channel for all purposes of appropriation as well as for other purposes.

And the so-called waste water which plaintiff filed upon has evidently been the water diverted by defendant and her predecessors in interest in excess of the quantity needed by them. By the application and use of this surplus through the Ryan ditches, through which at all normal times has been diverted the entire flow of Star Canyon Creek, plaintiff has, without objection, until the last two or three years, secured a vested right, subject to the prior right of the defendant, to the amount of his certificate, and such a right which he is entitled to have quieted and protected by a decree of this court. A person cannot divert the entire flow of a natural stream through his artificial ditches, provided the flow is in excess of the amount to which he is entitled, continue such diversion for forty years or more and thus prevent a person from appropriating such surplus by tying on to the ends of his ditches or even diverting such surplus from the ditches themselves; such flow being the natural flow of the stream and the artificial channels become the natural channel of the stream after a lapse of such time as we have in this case. In support of this principle of law we cite and rely upon Wiel on Water Rights (3d ed.), vol. 1, sec. 60 and cases cited in notes 19 to 21. Then too, such seems so clearly to be equity and justice that if there were no cases to support the right of plaintiff to file upon such surplus waters so diverted by defendant the decision in this case should establish such to be the law."

Respondent made his application to the state engineer, received his certificate of appropriation, cultivated his lands, and otherwise used the waters diverted by him for domestic and stock watering purposes, with reference to the changed condition of the stream. Equity ought, therefore, to estop appellant from asserting that this changed condition of the stream brought about by her predecessors in interest and maintained by them and her over a long period of time operates to defeat respondent's right of appropriation.

I do not think the fact that respondent's ditches make no direct connection with appellant's main ditch,

ought to be permitted to defeat the former's appropriation. His ditches have been so constructed as to collect the surplus waters coming from appellant's lands. They collect such waters when the same are not diverted by appellant to lands entitled to no service of water. Respondent's ditches divert the surplus and unappropriated waters of Star Canyon creek just as effectually as if his ditches pierced the bank of the creek above appellant's dam or the bank of her ditch below the dam. To hold to the contrary is to give more heed to the form of an appropriation than to its substance. Equity dislikes a discrimination of this kind.

If appellant considers the continual flowing of surplus waters over her lands to respondent's intercepting ditches injurious to the land, she may remedy this by permitting his quota to come down the *former* channel of the creek, for the evidence shows that his ditches are so constructed as to intercept and collect any waters that may come down this course.

The decree should be affirmed.