IN THE MATTER OF THE DETERMINATION OF THE RELATIVE RIGHTS OF CLAIMANTS AND APPROPRIATORS IN AND TO THE WATERS OF BASSETT CREEK AND ITS TRIBUTARIES IN WHITE PINE COUNTY, STATE OF NEVADA.

No. 3406

April 19, 1944.                    147 P. (2d) 1022.

*Milton B. Badt,* of Elko, for Appellant.

*William M. Kearney,* of Reno, for Respondent B. H. Robison.

*Alan Bible,* Attorney-General, and *W. T. Mathews,* Deputy Attorney-General, Amici Curiæ.

## OPINION

By the Court, TABER, J.:

In August 1941 the State Engineer made his final order of determination of the relative rights of Bassett Creek and its tributaries, situated in White Pine County. The only two water users on the Bassett Creek stream system are appellant Richard Bate and respondent B. H. Robison. Exceptions to said order of determination were later filed by Robison with the clerk of the Seventh judicial district court which, after a hearing as provided by statute, entered its decree modifying the state engineer's order. Bate moved for a new trial, which was denied, and he has appealed to this court from said decree, and from the order denying a new trial. Respondent has moved for a dismissal of both appeals; also to strike the bill of exceptions and record on appeal. He contends that this court is without jurisdiction to entertain either appeal.

The trial court's written decision, dated September 4, 1942, was filed September 12. Service of notice of the decision was admitted by Bate on September 18. The latter's notice of intention to move for a new trial, dated September 18, was served September 19, and filed September 21. Robison's proposed findings of fact and conclusions of law were filed October 15. Bate served and filed proposed modifications, and the court, by order dated November 2 and filed November 10, settled the findings and conclusions of law as proposed by Robison, and also on November 10 filed its judgment

dated November 2. On the last-named date the court overruled Bate's motion for a new trial. Appellant's notice of appeal was served November 20, and was filed November 21. His bond on appeal was also filed November 21.

■ It is respondent's contention that the motion for a new trial was of no effect because the notice of intention was filed before the entry of the final decree. As the 1913 water law, N. C. L. 1929, sec. 7890 et seq., contains no provision prescribing the time within which the notice of intention must be served or filed, the court is of opinion that section 4 of the 1937 new trials and appeals act (Stats. of Nevada 1937, chap. 32, p. 55, 2 N. C. L., 1931–1941 Supp. sec. 9385.54, pp. 1248, 1249) should govern. That section reads in part: "The party intending to move for a new trial must—within five days after the verdict of the jury, if the action was tried by jury, or within ten days after service, by the prevailing party in the action or proceeding upon the unsuccessful party thereto, of a written notice of the decision of the court, or referee, if the action was tried without a jury—serve upon the adverse party and file with the clerk of the court a notice of his intention to move for a new trial * * *." In cases like the present, as we said in Carpenter v. Sixth Judicial District Court, 59 Nev. 42, 48, 73 P. 2d 1310, 84 P. 2d 489, 492, "ten days from date of notice of decision are allowed for filing notice of motion for new trial." In the instant case notice of intention to move for a new trial was properly served and filed within ten days after service of written notice of the trial court's decision.

■ The notice of appeal was addressed to the state engineer and attorney-general as well as to respondent and his attorneys. A copy of the notice was served on the state engineer and attorney-general. The notice of intention to move for a new trial, however, was directed to respondent and his attorneys, and served

upon the latter, but was not directed to the state engineer or attorney-general, nor was a copy served upon either of them. Respondent, relying chiefly upon sec. 36(a) of the water law (Stats. of Nevada, 1937, chap. 150, pp. 328, 329) and In re Silver Creek, 57 Nev. 232, 61 P. 2d 987, contends that the notice of intention must be directed to and a copy served upon the attorney-general and the state engineer.

In the Silver Creek case there were three sets of claimants, who may be referred to as Cronin, Caton, and LaBorde. Two of these, LaBorde and Caton, filed exceptions in the district court to the state engineer's final order of determination. Cronin filed no exceptions. The trial court, after due hearing, made certain changes in the order of determination, and with such changes confirmed and approved it. Caton moved for a new trial. The notice of intention was directed to the state engineer, the attorney-general, LaBorde and his attorneys, and Cronin and her representative, the attorney-general. A copy of the notice of intention was served upon La Borde's attorneys, and upon the attorney-general, attorney for the state engineer. The motion for a new trial was denied, and thereafter Caton filed and served notice of appeal from the judgment and from the order denying his motion for a new trial. The notice of appeal was directed to LaBorde and his attorneys and served upon the latter. No other notice of appeal was filed or served.

Section 36(d) of the water law (Stats. of Nevada, 1937, chap. 150, p. 330, 2 N. C. L., 1931–1941 Supp. sec. 7923(d), pp. 1121, 1122) provides: "Notice of intention to move for a new trial shall be served upon the attorneys of record for claimants who have filed exceptions or objections to the final order of determination of the state engineer as provided in section 35 of this act, and all claimants or water users who have not filed exceptions or objections to said final order of determination or appeared in the cause by an attorney, shall

be served with a copy of notice of intention to move for a new trial by the service of a copy thereof on the attorney-general of the State of Nevada as their process agent." Robison, the only user of the Bassett Creek system besides Bate, was the only claimant in the case at bar who filed exceptions to the state engineer's final order of determination. The notice of intention was served upon his attorney. Under said section 36 (d) it was not necessary in this case that the notice of intention be directed to or served upon either the state engineer or the attorney-general because there were no water users, except appellant Bate himself, who had not filed exceptions to the final order of determination, nor was there any claimant who had not appeared in the cause by attorney.

It is further contended by respondent that appellant is not an aggrieved party, and therefore has no right to appeal, either from the judgment or from the order denying his motion for a new trial. In the state engineer's final order of determination Bate was awarded the use of water to irrigate 420.24 acres with a priority of 1878, and 49.77 acres with a priority of 1896. In said order of determination the State Engineer decided that Robison has no vested rights in or to the use of any of the waters of the Bassett Creek stream system. The decree of the trial court awarded Bate the same rights as were given him by the final order of determination, but instead of denying any vested rights to Robison, said decree awarded him the right to irrigate 95 acres, with a priority of 1883. The effect of this is to put Robison's 1883 priority for 95 acres ahead of Bate's 1896 priority for 49.77 acres. If in a dry year there should be insufficient water to irrigate all the lands of both parties, Bates could not irrigate any of his 1896 priority until sufficient water has been permitted to go down to Robison with which to irrigate his 1883 priority. Bate, therefore, is clearly an aggrieved party.

As the motion to strike the bill of exceptions and the record on appeal are based upon grounds already

considered herein, no discussion with respect to that motion is required.

The motion to dismiss the appeal from the decree, the motion to dismiss the appeal from the order denying the motion for a new trial, and the motion to strike the bill of exceptions and record on appeal are, and each of them is, denied.

## ON THE MERITS

January 29, 1945.                    155 P. (2d) 324.

*Milton B. Badt, of Elko,* for Appellant.

*William M. Kearney,* of Reno, for Respondent.

*Alan Bible,* Attorney-General, and *W. T. Mathews,* Deputy Attorney-General, Amici Curiæ.

## OPINION

By the Court, ORR, J.:

Bassett Creek, situate in Spring Valley, White Pine County, Nevada, insofar as the use of its waters is concerned, may be designated as a two-man creek. The ranch nearest the headwaters of said creek is now owned and cultivated by Richard Bate, and adjoining the land of said Richard Bate, to the east, is land owned and cultivated by B. H. Robison. The waters of Bassett Creek have been used by the predecessors in interest of Bate and Robison for many years. The question to be determined on this appeal is whether or not the waters so used by Robison and his predecessors were waste

and surplus waters from the cultivated lands of Bate and his predecessors.

On or about the 16th day of December 1938 Robison petitioned the state engineer to determine the relative rights of the various claimants to the use of the waters of Bassett Creek, and on December 24, 1938, the state engineer's office made an investigation of the stream and made a preliminary report, wherein said state engineer recommended that proceedings be initiated to determine said relative rights. Thereafter proofs were submitted by the claimants, and the state engineer filed his preliminary order of determination on October 7, 1940. He found that the waters of Bassett Creek were first beneficially used in the year 1878, by predecessors in interest of claimant Richard Bate, the first diversion being in the SE¼ of the NW¼ of section 2, township 18 N., range 66 E., by means of a ditch running north from this piont of diversion and being used to irrigate the alfalfa and grain fields belonging to Bate. The state engineer further found a waste water ditch on the easterly side of the alfalfa and grain fields now owned by Bate, which was used to capture waste and surplus water, and through which said waste water was conveyed to a channel called Garden Creek, said Garden Creek being a small stream that flows only during the spring months. From the point where the waste water enters Garden Creek it runs easterly and is spread out over the meadow or hay lands in the W½ of the SW¼ of section 36, township 19 N., range 66 E. The state engineer further found that from the point of diversion of the North ditch, heretofore mentioned, the main channel of Bassett Creek flows in an easterly direction to the south of the Bate house and orchard, and divides into several parts, through which water reaches the meadow pasture land irrigated by Bate. The state engineer further reported that he failed to find any evidence that the main channel of Bassett Creek ever reached the lands of said B. H. Robison. Robison filed

a map in support of his proof, which depicted Bassett Creek entering the SE¼ of the SW¼ of section 36, township 19 N., range 66 E., in three channels, but the state engineer reported that his field examination failed to disclose any such channels that could be called Bassett Creek, and concluded with the finding that the lands cultivated by B. H. Robison and his predecessors were dependent upon the surplus and waste waters running off the land of Richard Bate, in numerous small channels and by underground seepage.

After an extensive hearing and on August 31, 1941, the state engineer filed a final order of determination, in which he found that claimant Robison had acquired no right in the waters of Bassett Creek. The final order of determination was filed in the Seventh judicial district court.

■ We have set out at length the findings of the state engineer because, as stated by the attorney-general, they "are entitled to great respect as representing the opinion of an expert upon a matter within the range of his special knowledge and experience." In re Barber Creek, 43 Nev. 403, 182 P. 925; Scossa v. Church, 46 Nev. 254, 205 P. 518, 210 P. 563; Deepwater Railway Co. v. Honaker et al., 66 W. Va. 136, 66 S. E. 104, 27 L. R. A., N. S., 388, at p. 394.

Claimant Robison filed exceptions to the final order of determination, and a trial was held. The trial judge viewed the premises and the stream system in question, and thereafter rendered an opinion and decision modifying the order of determination of the state engineer wherein it denied Robison any vested rights. The decree gave Robison the right to irrigate seventy-one acres, with a priority of 1883. Bate was awarded 7.728 cubic feet per second to irrigate his acreage, while Robison was awarded 1.5618 cubic feet per second to irrigate his acreage. This appeal is from the order and decree modifying the final order of determination of the state engineer.

At the hearing before the trial court the state engineer's office was represented by counsel for the appellant Bate. The state engineer has taken no appeal, but Attorney-General Alan Bible, as legal advisor of the state engineer, and the Honorable W. T. Methews, Deputy Attorney-General, have been permitted to appear in this court as amici curiæ.

We first inquire whether the decree of the court modifying the final order of determination of the state engineer finds legal support in the evidence. The trial court, basing its findings on the evidence taken before it and the view which it had of the premises, became satisfied that at some former time Bassett Creek, after it left the mouth of the canyon, flowed down a channel some distance north of the present channel of said creek, referred to in these proceedings as the old channel; that the water spread out over certain lands of the Bate ranch, then passed over or percolated through said lands and was then collected in a natural channel and flowed along said natural channel through a cut in a natural levee which was found on the Bate land; that the said last-mentioned channel flattened out in the field or meadow belonging to Bate and became all but obliterated there. The trial judge found a swale which indicated to him the probable course of the waters during the earlier years, and also found a living spring, from which spring a well-defined channel runs into and across the Keegan meadows on to the desert land below. The court also found that Bassett Creek, after it emerged from the mouth of the canyon, has been changed from what it once was and has run for approximately sixty years in its present channel south of the orchard and house on the Bate land, through what is known as the Corkscrew ditch. It will be noted that the trial judge perceived certain conditions which did not meet the trained and practiced eye of the engineer.

If the evidence sustains the finding made by the state engineer that the channel running to the south of the

Bate house and orchard and down to the Bate land below is the main channel of Bassett Creek and the only water which is conveyed on to the Robison land is through the so-called North ditch, taken from the said channel, and which conveys water used in the irrigation of the alfalfa and other cultivated land of Bate, and flows over said land as the same is being irrigated, seeps through the said land into the waste water ditch, and is then conveyed through said waste water ditch into the so-called channel of Garden Creek, thence upon the Cleveland meadows, where it flattens out after use in irrigating the said meadows and flows over and seeps through the said Cleveland meadows onto the land of Robison, then there is no question but what it is waste water as defined in the case of Gallio v. Ryan, 52 Nev. 330, 286 P. 963, and no rights could be initiated by Robison and his predecessors in interest. Binning v. Miller, 55 Wyo. 451, 102 P. 2d 54.

■ It is admitted by Robison that where one takes water from the ditches or laterals of another he does not obtain a right to control such ditches or laterals as against the owner thereof, nor can he compel the owner to continue the waste of water. "It is just as necessary to the creation and preservation of a water right, to provide means for the continual diversion of the water from its natural channel and for conducting it to the place where it is applied to some beneficial purpose, as it is to apply it to a beneficial purpose." One cannot "arbitrarily seize and use another's ditch, or interest in a ditch, for that purpose." McRae v. Small, 48 Or. 139, 85 P. 503, at page 505; Smithfield West Bench Irr. Co. v. Union Central Life Ins. Co. et al., Utah, 142 P. 2d 866.

■ In determining the point of whether or not there is substantial evidence to sustain the finding of the trial court as to the probable course of Bassett Creek, we do not feel that it is necessary to resort to conjecture as to what may have been the probable conditions at a time beyond the memory of any person who

was able to testify at the hearing. We do have an established condition which has existed for more than sixty years, a condition which was existent at the time Patrick Keegan, a predecessor of claimant Robison, first settled on the land now claimed by Robison. At that time the waters of Bassett Creek were contained in its present channel and ran to the south of the house and orchard now on the Bate land, the water used to irrigate the land now owned by Bate was conveyed thereon by the North ditch, and the water which Keegan, predecessor of Robison, first used flowed over the Bate lands, being used there for irrigation purposes, and seeped through said land, and after such use and such seepage reached the said Keegan land. Keegan accepted the conditions as he then found them, and made no attempt, then or afterwards, nor have any of his successors in interest made any attempt, to make a diversion direct from the channel of Bassett Creek as it then existed and has existed for more than sixty years. No matter what conditions may have anciently prevailed, the fact remains that the old channel has been dry for that length of time, with the possible exception of periods during flood conditions when the banks of the main channel overflowed. Such a condition is not sufficient to justify a requirement that water be permitted to flow in the old channel during the irrigation season. Robison and his predecessors, having acquiesced in the situation as it existed over so long a period of years, cannot be heard at this late date to say that the situation should now be changed and the channel of Bassett Creek diverted so as to conform to some probable condition that may have existed in the distant past, so that a legal means of diversion be provided Robison, a means which has never had any real basis in fact insofar as available evidence is concerned. The testimony of John Yelland, who first became acquainted with the property in 1883 and who has the earliest knowledge of said creek, stands uncontroverted that conditions then were as they are now; that the present

channel of Bassett Creek was then its channel and at that time gave evidence of having been its channel for many years theretofore, because of the vegetation that had matured in and around it. There is evidence that during certain periods of the year, during high water, at a point near where Bassett Creek debouches from the canyon, certain water ran into the so-called old channel, and that in order to control it a dam was put in there and has been maintained. When that dam was put in or how long it has been maintained no one was able to say, and just how much water may have run over into the old channel or for what periods of time does not appear. Such indefinite, uncertain evidence certainly cannot be said to establish any right which the state engineer or anyone else could properly administer under the circumstances. Suppose the order of the trial court is allowed to stand and that some time during the irrigation season the amount of water decreed to Robison is not reaching his land, and a demand is made upon the state engineer to make provision for compliance with the decree. Could it be said that the state engineer would have the legal authority to go to the dam near the mouth of the canyon and change it so that the required amount of water would run into the old channel and thence to the westerly side of the Bate fields, where it would be blocked by the embankment of the North ditch? This North ditch, it appears, has been elevated through the low space in this section, hence, in order to permit the water turned into the old channel to continue its uninterrupted flow it would necessitate cutting this North ditch and destroying the means of conveying water onto the northerly portion of the Bate land. But, by way of illustration, let us assume that the state engineer had performed the acts mentioned; he is not yet through; he must then turn the water upon the cultivated fields of Bate, to flood over the same or cut a new channel—this notwithstanding such action might cause destruction of growing crops and render useless certain lands for future

cultivation, to say nothing of flooding or cutting new channels in the Cleveland Meadows. To state the situation confronting the state engineer is to demonstrate the impossibility of administering the decree.

■ Claimant Robison, in his brief, states that the question raised here for determination is: Did Pat Keegan, as a matter of law, make an appropriation of the waters of Bassett Creek for use on certain meadow land in 1883? Taking into consideration all of the evidence in this case, we cannot find that he did, but do believe that the water which Pat Keegan and his successors have used for sixty years was waste water, and not the natural waters of Bassett Creek.

■ Claimant Robison further asks: "What difference does it make to Bate if the waters used by Keegan and his successors from 1883 down to the present time were waste or surplus waters which Bate did not use beneficially?" The difference is this: that should the court decree Robison a certain fixed amount of water to be used by him, it would then be compelled to further order that the ditches and lands of Bate be used as channels through which the water be conveyed to the Robison land. This the court has no power to do. To permit the use of the old channel for water to be conveyed to the Robison land, such water would not only cross the Bate fields and meadows by seepage and flooding and not by means of a well-defined or any channel, but the water would also cross cultivated land belonging to Bate, lying to the west of the so-called levee or bench as shown on the Millard map of 1912.

■ There may be surplus water in Bassett Creek. If so, the law provides the method by which it may be appropriated. That method has not been followed. Walsh v. Wallace, 26 Nev. 299, at pages 327, 328, 67 P. 914, 99 Am. St. Rep. 692; sec. 20, Water Law 1913, now sec. 7907, N. C. L. 1929.

Robison asks: "How is it possible as a matter of law for Bate to divert water from the channel of Bassett Creek and run it in such manner as to convert it

into waste water, when he is entitled to only 7.728 cubic feet per second, and thus prevent other appropriators from making an appropriation of the balance of the water?" As we view the case, no attempt is being made to prevent appropriators other than Bate from making appropriations. What is being insisted upon is that such appropriators construct proper means of diversion of the surplus water, and not demand the use of facilities constructed and maintained by Bate and his predecessors, which he (Robison) admits has no legal sanction. Again the position of claimant Robison becomes untenable because it is predicated upon the false premise that the so-called "old channel" should be considered the main channel of Bassett Creek.

Claimant Robison has not placed himself in a position such as Justice DUCKER, in his dissenting opinion in the case of Gallio v. Ryan, supra, stated should be allowed to prevail. Robison makes no claim for, nor does he ask permission to take from Bassett Creek, as we find the channel to be, surplus water below the diversion made by Bate, after the amount allowed Bate has been diverted.

The evidence in this case, as we view it, leads us to the conclusion that the finding of the state engineer is correct, and that the order of the trial court in awarding to Robison a vested right to certain waters of Bassett Creek finds no substantial support in the evidence. It is therefore ordered that the order of the trial court be reversed and the case remanded with directions that the trial court enter a decree sustaining the findings of the state engineer.

ON PETITION FOR REHEARING

May 4, 1945.

*Per Curiam:*

Rehearing denied.

ON COSTS

June 5, 1945.                    159 P. (2d) 360.

*Milton B. Badt,* of Elko, for Appellant Richard Bate.

*William M. Kearney,* of Reno, for Respondent B. H. Robison.

*Alan Bible,* Attorney-General, and *W. T. Mathews,* Deputy Attorney-General, Amici Curiæ.

## OPINION

By the Court, ORR, J.:

Respondent has appealed from the ruling of the clerk upon the cost bill filed by appellant herein.

The cost bill as filed by appellant contains an item of $42.70, claimed for copying 427 folios of volumes III and IV of the record on appeal. Respondent objects to the allowance of this amount, for the reason that said volumes III and IV are original documents filed in the

trial court; that said original documents were made a part of the record as such, and no transcription or copy thereof made.

Attached to the notice of appeal from the ruling of the clerk are original and copies of correspondence which passed between counsel for appellant and counsel for respondent. This correspondence makes it very clear that said volumes III and IV are original exhibits. The clerk did not have this evidence before her at the time she made her ruling.

Appellant contends that inasmuch as the documentary evidence attached to the notice of appeal was not submitted to the clerk it should be stricken. It is immaterial whether or not this be done. From an inspection of the said volumes III and IV we are convinced they are original exhibits, and being original exhibits no allowance can be made for the said two volumes, as they were not actually copied. Richards v. Vermilyea, 42 Nev. 294, 300, 175 P. 188, 180 P. 121.

The amount allowed for "typing bill of exceptions" is reduced from the sum of $185.80 to $143.10, and in all other respects the ruling of the clerk is sustained.